### 26315. JEWEL TEA COMPANY *v.* ROWLING.

DECIDED DECEMBER 4, 1937.
ADHERED TO ON REHEARING, DECEMBER 20, 1937.

*Parks, Garrett & McDonald, Frank B. McDonald Jr.,* for plaintiff in error.

*Blalock & Blalock,* contra.

STEPHENS, P. J. H. M. Rowling brought suit against Jewel Tea Company, to recover for loss of services of his wife, caused by the alleged negligence of the defendant through its alleged agent and servant, A. J. Paxton. The petition alleged the following facts: that on June 15, 1935, the plaintiff's wife, while recuperating from a serious operation, being just able to sit up, was sitting in the swing on the porch of her home in Waycross; that while she was sitting in the swing A. J. Paxton, the alleged agent and servant of the defendant, entered upon the plaintiff's porch suddenly and violently, and in a very threatening manner endeavored to procure an order from the plaintiff's wife for goods sold by the defendant; that the plaintiff's wife assured the defendant's alleged agent that on account of her husband being unemployed she could not place an order with him; that she also explained to Paxton that she was sick and unable to talk to him, and asked him not to worry her about an order; that the defendant's alleged agent thereupon entered into a tirade against the worthlessness of her husband in not being employed, as a result of which unemployment of the plaintiff the plaintiff's wife was unable to purchase goods

from the defendant company through the alleged agent, Paxton; that during all this time the defendant's alleged agent was shaking his finger in the face of the plaintiff's wife in a most threatening manner; that the plaintiff's wife again told Paxton that she was not interested in any of his goods, and there was no use to talk further; that as a result of this scene the plaintiff's wife became extremely nervous and frightened and trembled badly, all of which Paxton knew and saw; that the defendant's alleged agent continued to argue with the plaintiff's wife in a most threatening manner and shook his fist in the face of the plaintiff's wife; that he did this in such a threatening manner that she thought he was going to strike her; that she turned her head to avoid being struck, and hit it on the swing; that the plaintiff's wife, fearing that the defendant's alleged agent would strike her, jumped up and ran into the house; that when Paxton shook his fist in the face of the plaintiff's wife, she, anticipating bodily injury, became so frightened that she made an effort to get from the swing into the house to avoid being struck, and in so doing the threads or stitches in her recent incision were torn loose, and the wound was ripped open internally, as a result of which she suffered and continues to suffer excruciating physical pain as well as mental agony; that all such unlawful, vicious, unnecessary, and inexcusable conduct on the part of Paxton occurred after he had been advised by the plaintiff's wife that she had undergone a serious operation, was sick, and unable to talk to him; that all these violent statements were made by the defendant's alleged agent for the purpose of intimidating and harassing the plaintiff's wife into making a purchase of the defendant company's goods, and in making such statements, Paxton was acting within the scope of his employment and in the prosecution of the defendant's business; that as a result of the above-described scene the plaintiff's wife was and still is in a highly nervous condition from which she has never recovered; that such condition is permanent; that the plaintiff, by reason of the above alleged conduct of the defendant's alleged agent causing the injury to the plaintiff's wife, has been injured and damaged in the loss of his wife's services in the performance of her household duties in the sum of $50 per month, and his happiness in her society, companionship, and consortium has been impaired; that this impairment will continue for some time, to his damage in the sum

of $3000. The petition also alleged that in order to enforce the collection of the said claim the plaintiff sued out in the city court of Waycross an attachment against the defendant company, which was levied on a Dodge sedan automobile belonging to the defendant.

The defendant demurred generally on the ground that the allegations in the petition failed to set out a cause of action against the defendant. The defendant demurred specially to the petition, and moved to dismiss both the petition and the attachment, on the grounds that the allegation as to special damage caused the plaintiff is a mere conclusion of the pleader, also on the ground that the allegations as to the agency of Paxton with relation to the defendant company are mere conclusions of the pleader, also that the allegations as to the physical condition of the plaintiff's wife are mere conclusions of the pleader and without statement of sufficient facts on which to base the conclusions; that the plaintiff's wife impliedly consented to the alleged damage, and by reason of such consent neither she nor the plaintiff has any cause of action against the defendant; that the allegations of the petition show that the alleged damage was not caused by the legal and natural result of the act alleged to have been done, but that the alleged damage was only the remote and contingent result of the alleged act, and therefore there can be no recovery against the defendant; that the alleged misconduct of Paxton was not the proximate cause of the alleged damage and injury; that the petition does not allege sufficient facts to show that at the time of the alleged injury Paxton was acting for and in behalf of the defendant company and within the scope of his authority and employment. The defendant in its answer denied that Paxton was guilty of the conduct alleged, and averred that if he was guilty he acted beyond the scope of his duties as defined in the contract of employment between him and the defendant. The defendant also set out that Paxton, by reason of his being an "advance salesman," whose duties were to explain the merits of the defendant's products to prospective customers, and, if an order was received, to turn the order over to the regular "route man," was not an agent of the defendant company, but was an independent contractor working for his own interests in his own time, without any control being exercised over his activities by the defendant; that the defendant has not ratified and confirmed the

conduct of Paxton on the occasion of the alleged injury sued for; that by reason of the wife of the plaintiff not having availed herself of the various opportunities to leave the presence of the alleged agent. of the defendant she consented to the alleged injury and damage, and, having consented, she should not be heard to complain; and that she failed to exercise reasonable diligence, or any diligence whatever, for her own protection.

The defendant excepted to the overruling of the general and special demurrers to the petition. A verdict for the plaintiff in the sum of $1,000 was returned by the jury. The motion for new trial, with the exception of ground 5, contains only the general grounds and elaborations of them. In ground 5 the defendant excepts to the court's failing to sustain the defendant's motion to declare a mistrial on the ground that it was prejudicial to the defendant for the court to permit the plaintiff to examine a medical witness respecting the physical condition of the wife during the trial after she had left the witness-stand and had retired to another room in the court-house. The motion for new trial was overruled. The case came to the Court of Appeals on exceptions to that ruling, and to the overruling of the demurrers.

Without repeating the allegations or elaborating thereon, it appears that the petition set out a cause of action, and that the court did not err in overruling the demurrers. *Personal Finance Co.* v. *Whiting,* 48 *Ga. App.* 154 (3) (172 S. E. 111); *Atlanta Hub Co.* v. *Jones,* 47 *Ga. App.* 778 (171 S. E. 470); *Personal Finance Co.* v. *Loggins,* 50 *Ga. App.* 562 (179 S. E. 162); *Interstate Life & Accident Co.* v. *Brewer,* 56 *Ga. App.* 599 (193 S. E. 458). The testimony of Mrs. Rowling, the wife of the plaintiff, substantially sustains the allegations in the petition respecting the conduct of A. J. Paxton in his acts and doings towards her on the occasion alleged. It appears from her testimony that A. J. Paxton, the agent and employee of the defendant Jewel Tea Company, on the morning of June 15, 1935, came to the plaintiff's house where the plaintiff's wife was sitting on the porch, and entered her porch suddenly, violently, and unannounced, and in a very abrupt and threatening manner made certain statements to her in an effort to force her to buy products from the Jewel Tea Company; that she advised him that she had just been operated on, was sick and unable to talk with him, and asked him to leave the house; that in-

stead of leaving he continued his violent and intimidating talk, shaking his finger and fists in her face, advising her that he ought to have her husband arrested, and that she had no sense, and finally advanced on her, shaking his fists in her face and telling her that if her husband was a man he would get out and get a job where she could buy decent food; that such statements were made to her at a time when Paxton saw and knew that she was sick and cringing with fear and on the verge of a nervous breakdown; that she anticipated that Paxton was going to strike her and do her bodily injury, and that she became so frightened she made an effort to get away to avoid being struck and in so doing suffered physical injury. It is inferable from her testimony that the acts and doings of Paxton were done in furtherance of his attempt to sell to her products of the defendant company. It appears from the evidence of the physician and the husband, as well as the wife, that as a result of Paxton's conduct her physical condition was aggravated and her illness was prolonged, and that the husband, as a result of such aggravation and prolongation of her illness, suffered a loss of her services as a wife.

It appeared from Paxton's contract of employment with the defendant company, which was introduced in evidence, that he was what was termed an "advance salesman;" that he contracted with the company to take orders for their products and merchandise, for which he was to be paid commissions for "standard delivered orders" in amounts designated; that he was to receive no commissions on orders which were not "standard delivered orders," which are orders written and delivered in accordance with the requirements set out in the contract; that such orders were to be secured only from persons residing in territory assigned to him; that the orders must comply with designated requirements; that they must not be taken from persons who are not Jewel customers; that he must properly enter each order on an order form, the name, address of the customer, amount, and kind of the product, the name and value of the premium selected, date of delivery, and enter his signature; that the white copy of the order form must be left with the customer; that he must furnish the branch manager with a complete report at the end of each week, signed by himself, summarizing the orders written during the week and containing information relating to

orders taken during the week; that he must thoroughly explain to each person from whom he solicits an order that the premium is not given away but is charged to the customer's account, and that the customer must pay for the premium; that no order must be solicited from a person obviously irresponsible and undesirable as a customer, the company reserving the right to decide such irresponsibility, and to refuse to make deliveries on orders or to pay commissions on such orders, and to cancel the orders; that a violation of any of these rules and regulations by the defendant's salesman was considered sufficient cause for cancellation of the contract; that premiums carried by Paxton should be charged to his account; that the company should pay no expenses of the advance salesman, except expenses which had been specifically authorized in writing by the company; that on the termination of the contract the advance salesman should promptly turn over to the company all books, accounts, papers, merchandise, etc., and other property belonging to the company; and that the advance salesman should receive, as his sole compensation under the contract, commissions on such standard delivered orders as provided in the contract. The contract was for no definite period of duration.

It appears from the testimony of one of the advance salesmen, that an advance salesman such as Mr. Paxton works under the local manager of the company, who tells him the name of the town and the part of the town to go into; that he is not permitted to handle other articles except those of the company; that sometimes the route manager designates what specific territory the advance salesman shall work in. It appears from the evidence of a witness who was an advance salesman for the defendant company, that he works under the local manager of the company; that when he is in the local manager's territory he is subject to the orders of the local manager; that all advance salesmen are subject to the orders of the local manager when working in his territory; that they are under the orders of the local manager; that these instructions come from the local route manager; that if the witness does not work he does not get paid; that he can work only a few hours if he desires, and can quit at any time he desires; that he is under no obligation to work the territory assigned to him; that he does not have to work it

unless he wanted to; that he could work it or quit. It appears from the evidence that the duties of Paxton were of an educational nature, that he called on people or at homes that are not customers, and explained the defendant's plan of doing business, and if the plan is satisfactory he books orders for their products to be delivered at a future date. The evidence therefore is sufficient to authorize a jury to find as a fact that the defendant company employed A. J. Paxton, as its advance salesman, for the sale of its products to customers procured by him, and that the company had the right to direct and control the time and manner of his execution of the work; and that therefore he was a servant of the company and not an independent contractor, and that when he called on the wife of the plaintiff, and was endeavoring to sell her products of the defendant company, he was acting as the company's servant, and not as an independent contractor.

The evidence authorized the inference that the defendant, through its agent and servant Paxton, acting within the scope of his authority in the furtherance of his efforts to sell the defendant's products to the plaintiff's wife, negligently and unlawfully, by what he said and did to her at the time, caused the injuries complained of, by aggravating her sickness and prolonging it, and thereby causing the plaintiff, her husband, to suffer a loss of her services as a wife, to his damage in the amount found by the jury. The condition of the wife's health at the time of the trial was a fact tending to throw light on her condition after the occurrence complained of, and which it was alleged aggravated her sickness. The court did not err in permitting her physician, who was on the stand, to testify that a short while before, and during a recess of the court on the same day, he had been called upon to attend the plaintiff's wife professionally as a physician in an ante-room of the court-house. It was not error, as being prejudicial to the defendant, for the court to permit the jury to know that the plaintiff's wife had become ill during the progress of the trial and while the physician was testifying, and that the court granted a temporary recess and suspended the trial in order that the physician, who was at the time on the witness-stand, could repair to the ante-room and administer medical treatment to the wife. The court did not err in over-

ruling the motion to declare a mistrial. The evidence authorized the verdict for the plaintiff, and no error appears.

*Judgment affirmed. Sutton and Felton, JJ., concur.*