31903. DIGSBY *v.* CARROLL BAKING COMPANY.

DECIDED MARCH 18, 1948.

*Louis M. Tatham, J. Richmond Garland, R. A. Whitsett,* for plaintiff.

*Calhoun & Calhoun,* for defendant.

PARKER, J. "Every person shall be liable for torts committed by . . his servant, by his command or in the prosecution and within the scope of his business, whether the same shall be by negligence or voluntary." Code, § 105-108. "A corporation is responsible for the acts of its agents in the business of their employment, just as an individual is liable; and whether the agent was acting within the scope of his employment, when he committed a tortious act, is a question of fact for the jury." *Century Building Co.* v. *Lewkowitz,* 1 *Ga. App.* 636 (57 S. E. 1036). "A corporation, under the law, is a 'person', in the meaning of the section quoted; and the terms of the section apply to corporations as well as to natural persons, and the principle of law there announced is well settled by the adjudications of the courts." *L. & N. R. Co.* v. *Hudson,* 10 *Ga. App.* 169, 171 (73 S. E. 30). "The expressions, 'in the scope of his business', or 'in the scope of his employment', or similar words, have sometimes been given too narrow a meaning. A master rarely commands a servant to be negligent, or employs him with the expectation that he will commit a negligent or wilful tort; but if the act is done in the prosecution of the master's business, that is, if the servant is at the time engaged in serving the master, the latter will be liable." *Fielder* v. *Davison,* 139 *Ga.* 509, 511 (77 S. E. 618). "Expressions used in some reports and textbooks, that a master is bound by the act of his agent or servant in the scope of his agency and in the furtherance of the master's business, or when the servant

is acting for the benefit of the master, do not mean that the agent's act must be beneficial to the master or the latter is not bound. If any declare such a rule as that the master is bound by torts of the servant which benefit him, but not by any others, we can not accept it as the rule in this State." *Savannah Electric Co.* v. *Wheeler*, 128 *Ga.* 550, 554 (58 S. E. 38). See also *Frazier* v. *Southern Ry. Co.,* 200 *Ga.* 590 (37 S. E. 2d, 774). "Some of the courts seem at one time to have been inclined to hold that a master could not be held liable for the wilful torts of his servant, because, it was said, if the servant through anger or malice committed an assault upon a person, he ceased for the time being to occupy the position of servant, and acted independently; that, inasmuch as he was not authorized to commit an assault, he did not represent the master in that act, but acted as an individual, the master therefore being not liable either in case or in trespass. This argument has long since been exploded. The theory that one may be a servant one minute, and, the very next minute, get angry, commit an assault, and in that act be not a servant, was too refined a distinction. . . The courts have settled down to the common-sense doctrine that a master is liable for the torts of his servant, committed in the course of the servant's employment, even though the tort be a wilful one." *Central Ry. Co.* v. *Brown*, 113 *Ga.* 414, 416 (38 S. E. 989).

As was said by this court in *L. & N. R. Co.* v. *Hudson,* supra, "The difficulty is in the application of the general principle of law to the particular facts." The law is plain, but each case must be considered in the light of its own facts. It appears here that the person who is alleged to have committed a tort upon the plaintiff was the employee and servant of the defendant; that in the discharge of his duties as such servant he went to the home of the plaintiff to collect a small bill which she owed the defendant, which purpose was clearly within the prosecution of the business of the master; and that when the servant arrived at the home of the plaintiff, he immediately "became unusually boisterous, and started using vulgar, profane, and abusive language to the plaintiff," and threatening to take something from the house to get the money due the company. There is no allegation in the petition which demands the conclusion that the continuity of the employment of the agent as the servant of the defendant was

broken. The vulgar, profane, and abusive language was used immediately upon arrival and directly in connection with the servant's mission at the home to collect the debt due his employer. The use of vulgar, profane, and abusive language, without sufficient cause, as alleged in the petition, to the plaintiff, by the servant in his efforts to collect the debt, would authorize the jury to find that the language was used in the prosecution of the master's business and within the scope of that business. The fact that the servant followed up his alleged vulgar, profane, and abusive language, used to the plaintiff and in her immediate presence, with the lascivious suggestion that, "if he could not get the money any other way, he was going to 'take it out in trade', meaning he was going to have sexual intercourse with petitioner," was simply "adding insult to injury," and was a continuation of the conduct already engaged in. The conduct of the defendant's servant, under all the allegations of the petition, was a tort committed upon the plaintiff, and presented a question for the jury as to whether such tort was committed within the prosecution and scope of the master's business. "The question whether or not the servant at the time of an injury to another was acting in the prosecution of his master's business and in the scope of his employment is for determination by the jury, except in plain and indisputable cases." *Jump v. Anderson,* 58 *Ga. App.* 126, 128 (197 S. E. 644).

In addition to the general principles of law already cited, we call attention to a number of cases, very similar to the case at bar, in which this court held that a cause of action was stated as against a general demurrer. In *Atlanta Hub Co. v. Jones,* 47 *Ga. App.* 778 (171 S. E. 470), it was held that the language and conduct of the defendant's bill collector, in his efforts to collect a bill from the plaintiff, which consisted of loud speaking, cursing, and violent threats, resulting in injuries to the plaintiff, constituted a cause of action, and the court did not err in overruling the defendant's demurrer. In *Personal Finance Co. v. Whiteing,* 48 *Ga. App.* 154 (172 S. E. 111)—where the defendant's collector forced his way into the plaintiff's house when the plaintiff was ill and was recuperating from an operation, and threatened the plaintiff by stating that his company was going to take the plaintiff's property to pay her husband's debts, and "continued to nag

at and worry petitioner," after she had notified him that she was too ill and nervous to discuss the matter with him, to such an extent that she had a complete nervous breakdown—it was held that the petition stated a cause of action against the employer. In *American Security Co.* v. *Cook*, 49 *Ga. App.* 723 (176 S. E. 798), it was held that the petition stated a cause of action in alleging that the agent of the defendant company came to the home of the plaintiff either to collect money alleged to be due to said company, or to take up the furniture of the plaintiff, and kicked out a screen door in entering the home, and began cursing the plaintiff, using vile and opprobrious words and terms to the plaintiff in the presence of his wife, refusing to desist when requested to do so, which conduct caused physical injuries to his wife. In *Personal Finance Co.* v. *Loggins*, 50 *Ga. App.* 562 (179 S. E. 162), it was held that the petition stated a cause of action. It alleged that the agent of the defendant company, whose duty was to collect an account against the plaintiff's husband, went to the plaintiff's house in the absence of the husband, and made threats to the plaintiff that her husband's wages would be garnisheed and foreclosure proceedings would be had against the property, and in vicious terms and tones denounced the plaintiff's husband, after the defendant had been requested not to permit the agent to go again to the plaintiff's house and disturb her, causing a nervous shock to the plaintiff and producing her illness.

It will be noted that all of the four cases just cited are like the case at bar, in that each of them involved bad conduct amounting to a tort on the part of a collecting agent of the defendant, which conduct was injurious to the plaintiff. In *Jewel Tea Co.* v. *Rowling*, 57 *Ga. App.* 116 (194 S. E. 393), this court held that the petition stated a cause of action. It alleged that the sales agent of the defendant went to the plaintiff's home, and in a threatening manner endeavored to procure an order from his wife for goods sold by the defendant, after she had explained to him that she was sick and unable to talk to him, and had asked him not to worry her about an order; said agent abusing her husband and shaking his finger in the plaintiff's face in a threatening manner, which conduct resulted in the plaintiff becoming extremely nervous and frightened, and in injuries to her when she tried to go from the porch into the house and get away from the

salesman. In *Interstate Life & Accident Co.* v. *Brewer*, 56 *Ga. App.* 599 (193 S. E. 458), it was held that a petition stated a cause of action against the insurance company in alleging that its agent went to the home of the plaintiff while she was suffering from high blood pressure and heart trouble, to make inquiry of the plaintiff concerning her illness, and continued to argue with her in a boisterous manner, trying to force her to accept a small amount of money over her protests, and throwing the same at her and striking her body with it, and remarking as he left the house, "You don't need a doctor; you ought to die."

This action was not for a mere negligent tort, but was for a positive and wilful wrong, and in such a case the plaintiff may recover for nervous shock and fright, with or without resulting physical injury. *Atlanta Hub Co.* v. *Jones,* supra. "While mental suffering, unaccompanied by injury to purse or person, affords no basis for an action predicated upon wrongful acts merely negligent, yet such damages may be recovered in those cases where the plaintiff has suffered at the hands of the defendant a wanton, voluntary or intentional wrong the natural result of which is the causation of mental suffering and wounded feelings." *Dunn* v. *Western Union Tel. Co.,* 2 *Ga. App.* 845 (3) (59 S. E. 189); *Young* v. *W. & A. Railroad,* 39 *Ga. App.* 761, 766 (148 S. E. 414). If the allegations made in the instant case be true, they unquestionably show a wanton, voluntary, and intentional wrong committed by the defendant's agent. Furthermore, they also show injuries naturally resulting from the wrong. It appears that the plaintiff was pregnant, and this condition was obvious; that upon the use of the vulgar, profane, and abusive language to the plaintiff she became ill, nervous, and practically hysterical; and while the plaintiff was in this condition, obvious to the defendant's agent and servant, he made the final insulting remark alleged in the petition. It is then alleged that the plaintiff's nerves were completely shattered and she was forced to go to the hospital that day, where she gave birth to her child early the following morning; and that at the time of the filing of the suit the plaintiff had not completely gained her composure, and her nerves were still upset as a result of the conduct of the defendant's agent and servant.

Counsel for the defendant have argued this case at considerable

length, citing many authorities to the effect that the master is not liable where the servant steps aside or deviates from the service of the master, as was held in *Savannah Electric Co.* v. *Hodges*, 6 *Ga. App.* 470 (65 S. E. 322), and other similar cases. They argue that, when the agent and servant of the defendant allegedly made the indecent proposal to the plaintiff that he would take the money out in trade—thereby seeking to satisfy a lecherous desire of his own—the servant had definitely departed from the scope of the employment of the master and was seeking personal satisfaction of a physical appetite. There was no departure from the business of the master, under the facts alleged in this case, as contemplated by the rule in *Savannah Electric Co.* v. *Hodges*, supra. See *Frazier* v. *Southern Ry. Company*, 200 *Ga.* 590, 594 (37 S. E. 2d, 774). The personal-gratification idea was only a part of the conduct complained of. It was clearly alleged that prior to the lustful suggestion charged in the petition the servant of the defendant company, without justification or excuse, had committed a tort upon the plaintiff by using vulgar, profane, and abusive language to her in an unusually boisterous manner, in direct connection with his efforts to collect the debt, and in threatening to take some item of property from the house for the two dollars that was due his company.

We have considered this case carefully and have examined all of the authorities cited in the briefs. It seems to us that, under the general principles of law applicable, and under the holdings in a number of cases cited, the petition stated a cause of action as against a general demurrer. General allegations in pleadings are ordinarily good against a general demurrer. *Melba Cafeteria* v. *McClelland*, 73 *Ga. App.* 236 (36 S. E. 2d, 118). Applying that rule to this case, we think that the court erred in sustaining the demurrer and in dismissing the action.

*Judgment reversed. Sutton, C. J., concurs. Felton, J., concurs in the judgment.*