### 65878. McCOY et al. v. GEORGIA BAPTIST HOSPITAL.

CARLEY, Judge.

Plaintiff-appellants, Mr. and Mrs. McCoy, brought the instant tort suit against defendant-appellee Georgia Baptist Hospital (Hospital) and others. Count I sought damages for the mental

distress occasioned by the alleged intentional and malicious mishandling of the body of appellants' stillborn child and by a certain telephone communication from the Hospital. Count II alleged the existence of a contract of burial and sought damages "for the breach of contract in a reasonable sum for the mental suffering and anguish [appellants] have endured."

During the discovery stage, the following evidence was adduced: Appellants' stillborn child was delivered in the Hospital. Thereafter, appellants, who could not afford the cost of burial, signed the following document: "I (We) the parent(s) of baby McCoy (Deceased) born on 8-31-79 ... do hereby authorize the authorities of Georgia Baptist Hospital of Atlanta, Georgia to dispose of this infant in any manner they deem advisable and I (We) hereby relinquish all claims on body of said infant." Approximately one month later, the Hospital's representative telephoned appellants' residence. It is undisputed that this call from the Hospital's employee was itself precipitated by a prior call that it had received from a nurse employed by Mrs. McCoy's physician, said nurse requesting information concerning the disposition of the body of appellants' child. However, it is not established whether this nurse informed the Hospital's representative of the basis for her inquiry. It is likewise not conclusively established whether this nurse requested the Hospital to telephone Mrs. McCoy regarding the child's body or whether, in view of the nurse's inquiry, the decision to contact Mrs. McCoy directly was made solely by the Hospital.

Regardless of how the ultimate decision was made, according to the Hospital, the only information imparted by phone to Mrs. McCoy was limited to an explanation of the necessary procedure to be followed for releasing her child's body to a funeral home. However, construing the evidence most strongly for appellants, they were having no "second thoughts" about their decision regarding the disposition of the child's body and no information concerning the current disposition of the body had been solicited from or through the office of Mrs. McCoy's physician. According to appellants' evidence, the telephone call from the Hospital related that, based upon conversations with Mrs. McCoy's physician, "they felt that it would be best for [appellants] to come and get [the body of the child] and bury her." Also, and again construing the evidence most strongly for appellants, the Hospital employee, who knew Mrs. McCoy was having emotional problems, informed Mrs. McCoy that the child's body was retrievable a month after being stillborn because it was being stored in a freezer. Contending that no information whatsoever had been solicited concerning their child's body, appellants asserted that they were shocked to discover that, after a month, the body of the

child had yet to be disposed of properly and that the Hospital was now returning that responsibility to appellants. On the day following the phone call, appellants went voluntarily to the Hospital and signed the necessary papers for release of the child's body to a funeral home. The Hospital complied with this request, released the body, and a burial was conducted at appellants' expense.

On this evidence, the Hospital moved for and was granted summary judgment as to both counts of appellants' complaint. It is from that order that appellants bring the instant appeal.

1. Relying upon evidence concerning the Hospital's handling of the child's body, including the month-long retention and failure to dispose of it, appellants first assert that the trial court erred in granting the Hospital summary judgment as to such of their claims as were premised upon the mishandling of their child's body and upon the breach of a contract of burial by failure to treat the body with utmost dignity. In this regard, appellants rely upon *Louisville & N. R. Co. v. Wilson,* 123 Ga. 62 (51 SE 24) (1905) and *Mayer v. Turner,* 142 Ga. App. 63 (234 SE2d 853) (1977). Both the *Wilson* and *Mayer* decisions are premised upon the existence of two elements. The first is the "quasi-property" right that exists in the dead body of a relative. The second is the negligent breach of a contract to carry out the expressed wishes of the next of kin regarding the disposition of that dead body. See generally *Rivers v. Greenwood Cemetery,* 194 Ga. 524 (22 SE2d 134) (1942). "It certainly can not be said by the defendant company that a corpse is sufficiently property for a railroad company to receive and accept pay for its transportation, but is not sufficiently property to authorize a recovery for a breach of duty arising therefrom, or to prevent any duty from arising under such circumstances. If it received this body to be transported for hire, it was bound to discharge the duties arising from so doing, and for a failure to do so would be liable to an action." *Louisville & N. R. Co. v. Wilson,* supra at 71. "[T]here exists a legal duty, enforceable by the next of kin, which requires that a party contractually obligated to handle a corpse, do so nonnegligently and with utmost dignity. [Cit.]" *Mayer v. Turner,* supra at 64.

In the instant case, appellants had no quasi-property right in the body of their child and there was no concomitant contractual obligation on the part of the Hospital to carry out appellants' subjective wishes concerning the burial of their child. This is true because, by the clear and unambiguous language of the document signed by appellants, they "relinquish[ed] all claims" on the body of their child and authorized the Hospital to dispose of the body "in any manner [it] deem[ed] advisable." No conditions were imposed upon the Hospital as to the manner or time in which the Hospital would

accomplish the disposition of the body. "[W]here the writing shows on its face a definite and complete contract between the parties parol evidence will not be received to vary, modify or contradict its terms." *Bowen v. Swift & Co.,* 52 Ga. App. 793 (1) (184 SE 625) (1935). By the clear language of the document signed by appellants, they contracted away their "quasi-property" right in the body of their child and the Hospital, in turn, did not contract to carry out any of appellants' wishes whatsoever concerning the burial of their child. Nothing that might have occurred to the body of the child after appellants signed the release and before appellants reclaimed the body was violative of any rights that appellants had in the body or in negligent breach of any contractual obligation of burial otherwise owed to them by the Hospital. Accordingly, the trial court did not err in granting the Hospital summary judgment insofar as appellants sought to recover tort damages premised upon the mishandling of their child's body or upon the negligent breach of a contract of burial obligating the Hospital to treat the body with utmost dignity.

2. Having determined that the Hospital violated no duty to appellants regarding the actual body of the child, we turn to the issue of whether the Hospital violated any other duty owing to appellants directly. In this regard, appellants assert that the Hospital's telephone call was a tort for which they can recover damages in tort for the mental distress occasioned thereby.

"Georgia does recognize a cause of action for intentional infliction of emotional distress. [Cits.]" *Ga. Power Co. v. Johnson,* 155 Ga. App. 862, 863 (274 SE2d 17) (1980). " 'While mental suffering, unaccompanied by injury to purse or person, affords no basis for an action predicated upon wrongful acts merely negligent, yet such damages may be recovered in those cases where the plaintiff has suffered at the hands of the defendant a wanton, voluntary or intentional wrong the natural result of which is the causation of mental suffering and wounded feelings.' [Cits.]" *Digsby v. Carroll Baking Co.,* 76 Ga. App. 656, 662 (47 SE2d 203) (1948). See also *Tuggle v. Wilson,* 248 Ga. 335, 337 (282 SE2d 110) (1981). "[I]t is equally well established that for a wanton and wilful tort or for a reckless disregard of the rights of others, equivalent to an intentional tort by the defendant, the injured party may recover for the mental pain and anguish suffered therefrom." *Pollard v. Phelps,* 56 Ga. App. 408 (1) (193 SE 102) (1937).

Construing the evidence most strongly against the Hospital, the following view of the case would be authorized: A nurse employed by Mrs. McCoy's physician called the Hospital requesting information concerning the current disposition of the body of appellants' child. It is not conclusively established that the nurse apprised the Hospital's

representative that her inquiry was being prompted by Mrs. McCoy's "second thoughts" concerning the disposition of the child's body or that Mrs. McCoy herself desired the requested information. To all intents and purposes, the nurse only informed the Hospital's employee that it was her employer, Mrs. McCoy's private physician, who was interested in acquiring the desired information. However, absent an apprisal that it was Mrs. McCoy, rather than her physician, who wished to know the current disposition of the body and without a specific request that Mrs. McCoy be informed directly of that disposition, the Hospital nonetheless made an independent determination to do so. This was done by a Hospital employee who admittedly was aware of Mrs. McCoy's existing emotional problems. Despite a lack of knowledge concerning Mrs. McCoy's "second thoughts," a lack of express authority to converse with Mrs. McCoy directly in this regard, and an awareness of Mrs. McCoy's existing emotional problems, the Hospital employee informed Mrs. McCoy, who had not solicited any such information, that the body of the child was stored in a freezer and that she should "come and get it."

On this evidence, we are unable to conclude that, as a matter of law, the Hospital was merely an innocent conduit of information. If the Hospital lacked knowledge of anything other than a request from Mrs. McCoy's physician for information concerning the body, lacked express authority from Mrs. McCoy's physician to impart that information to anyone other than himself, and had prior notice of Mrs. McCoy's existing emotional problems surrounding the death of her child, we cannot say that a jury would not be authorized to find that the telephone call was made in reckless disregard of Mrs. McCoy's rights. " 'To recover damages on account of physical injuries resulting from fright, where there is no actual immediate personal injury, it must appear that the injuries were the natural and proximate result of the fright or shock, and that the defendant could or should have known that the act producing the injuries would with reasonable certainty cause such a result; and it must appear that the injuries resulted from such gross carelessness, coupled with a knowledge of the probable physical results, as amounted to wilful and reckless disregard of consequences . . .' [Cits.]" *Delta Finance Co. v. Ganakas,* 93 Ga. App. 297 (1) (91 SE2d 383) (1956).

In holding that genuine issues of material fact remain regarding the intentional infliction of emotional distress occasioned by the Hospital's telephone call to Mrs. McCoy, we do not foreclose the possibility that Mr. McCoy, who did not receive any direct communication from the Hospital, may yet be precluded, as a matter of law, from a recovery under this theory. In granting summary judgment, the trial court concluded only that, as a general

proposition, there was no evidence that the Hospital's decision to telephone appellants' residence and the subsequent conversation with Mrs. McCoy was made with a reckless disregard of the consequences and that consequently neither appellant would be entitled to recover. It is only this general conclusion which we find erroneous on the record before us, the evidence not negating the possibility that at least Mrs. McCoy might be entitled to recover. Neither the trial court nor the parties to this appeal have addressed the question of whether Mr. McCoy can recover for the emotional distress occasioned by an allegedly wanton and wilful telephone call that he did not himself receive and the contents of which he only learned about some time later. "On review this court will consider only the question of whether the appellee was entitled to a summary judgment on the grounds made by his motion." *Grizzard v. Grizzard,* 224 Ga. 42, 43 (159 SE2d 400) (1968). Accordingly, the question of whether Mr. McCoy can recover tort damages in his own right for emotional distress allegedly resulting from a telephone call to his wife will be addressed if and when that issue is specifically raised and ruled upon in the trial court. It is sufficient for purposes of the instant appeal to say that the trial court erred in holding that on the record before it, the Hospital was, as a matter of law, only an innocent conduit of information and that no jury question was presented concerning the Hospital's reckless disregard of the consequences of telephoning appellants' residence to impart the information concerning the child's body.

3. Summary judgment was properly granted to appellee as to Count II of appellants' complaint and that part of Count I which was premised upon the mishandling of the child's body. Summary judgment was erroneously granted to appellee as to that part of Count I which was premised upon the telephone call.

*Judgment affirmed in part and reversed in part. Shulman, C. J., Quillian, P. J., McMurray, P. J., Banke, Birdsong, Sognier and Pope, JJ., concur. Deen, P. J., dissents.*

DECIDED JULY 15, 1983.

*Robert G. Wellon,* for appellants.
*John A. Gilleland, Daryll Love, Robert G. Tanner,* for appellee.

DEEN, Presiding Judge, dissenting in part.
1. The majority opinion is correct in affirming the grant of summary judgment as to Count II of appellant's complaint regarding

the contract of burial and for alleged mental suffering and anguish flowing from the alleged breach.

2. The trial court's grant of summary judgment as to the part of Count I premised upon the telephone call was correct, and I respectfully dissent to this court's reversal. The lower court found that as a general proposition there was no evidence that the hospital's decision to telephone appellant's residence, and the resulting conversation, was made with a reckless disregard of the consequences. This court's finding is supported by the record and should be affirmed.

3. The day after delivery the mother wanted to see her stillborn child. The nurse brought the baby to her wrapped in a green operating cloth inside a brown sack or bag. The body was folded up, as it had gone through preliminary stages of autopsy. The nurse put the sack on the floor, so that the mother had to get out of bed and squat down to take the dead child in her arms. When the nurse put the bag on the floor, the mother admonished her to respect the dead.

Justice Lumpkin said in *Louisville & N. R. Co. v. Wilson,* 123 Ga. 62, 63 (51 SE 24) (1905): "Death is unique. It is unlike aught else in its certainty and its incidents. A corpse in some respects is the strangest thing on earth. A man who but yesterday breathed, and thought, and walked among us has passed away. Something has gone. The body is left still and cold, and is all that is visible to mortal eye of the man we knew. Around it cling love and memory. Beyond it may reach hope. It must be laid away. And the law — that rule of action which touches all human things — must touch also this thing of death . . . In doing this, the courts will not close their eyes to the customs and necessities of civilization in dealing with the dead, and those sentiments connected with decently disposing of the remains of the departed which furnish one ground of difference between men and brutes."

The case of Johnson v. Woman's Hospital, 527 SW2d 133 (1975), has some similarities to this case. In Johnson, outrageous conduct of the hospital was charged in connection with displaying to the mother the body of her premature infant, who had expired shortly after birth and had been placed in a gallon jar of formaldehyde.

A jury question is presented as to whether the hospital, in displaying the child's body in a brown bag and on the floor of the hospital room, showed outrageous and reckless disregard.