A98A2186. WAGES et al. v. AMISUB OF GEORGIA.
(508 SE2d 783)

ELDRIDGE, Judge.

Frances and Henry Wages and their children, who are the parents and siblings of decedent Misty Parr, appeal the grant of partial summary judgment to Amisub of Georgia, d/b/a Barrow Medical Center. We affirm.

Viewed in the light most favorable to the Wages, the facts show that, at approximately 10:00 a.m. on October 14, 1995, 23-year-old Misty Parr and her 25-year-old husband, Adam, were involved in a head-on collision in Auburn, Georgia. Adam Parr was pronounced dead at the scene, while Mrs. Parr was transported to Barrow Medical Center for emergency treatment. Mrs. Parr arrived at Barrow Medical Center at approximately 10:56 a.m., but her treatment was unsuccessful and she was pronounced dead at 1:33 p.m. by the Barrow County Medical Examiner. A deputy chaplain from the Barrow County Sheriff's Department went to the home of the plaintiffs and informed them that Mr. and Mrs. Parr had died as a result of a collision. At approximately 2:30 p.m., the plaintiffs arrived at the hospital, where they were taken to a small chapel. They discussed with the coroner the specifics of the injuries to Mr. and Mrs. Parr. A hospital employee then asked the plaintiffs if they would like to see Mrs. Parr. After responding affirmatively, the family members were escorted by the hospital employee to a room in the emergency ward.

Upon entering the room, the plaintiffs allegedly found Mrs. Parr's body lying naked on a hospital gurney, with breasts and genitalia exposed. Her arms, outstretched over her head, were left dan-

gling over the end of the gurney. An intubation device protruded from her mouth, which was pooled with saliva and blood. Various tubes and IV devices were connected to her body. Her hair was matted with blood and vomit, and her face and body were caked with blood, broken glass, dirt, gravel, and grass.

Mrs. Parr's mother, Frances Wages, attempted to get hospital employees to remove the intubation device and cover the decedent with a sheet, with limited success. Mrs. Wages also attempted to move Mrs. Parr's arms so that they were not dangling off of the gurney. However, rigor mortis had set in and the arms were difficult to move. The arms did not lie flat against Mrs. Parr's body, but instead protruded at an awkward angle; this problem also prevented the arms from lying flat when Mrs. Parr subsequently was placed in her coffin.

The plaintiffs filed suit against the hospital on March 24, 1997, alleging that the hospital negligently mishandled Mrs. Parr's body; that the hospital's failure to abide by its own policies regarding the handling of deceased patients, as well as standards adopted by a hospital accrediting agency, constituted negligence per se; and that, as a result of the hospital's negligent treatment of Mrs. Parr's body, they were traumatized and required psychological counseling and treatment. Barrow Medical Center responded, then moved for summary judgment.

The trial court granted partial summary judgment to Barrow Medical Center as to the complaint for negligent handling of a corpse. The trial court also ruled that the hospital's alleged failure to abide by their own policies did not constitute negligence per se. The plaintiffs appeal the trial court's order. *Held*:

1. The plaintiffs first challenge the trial court's determination that the complaint did not allege a cause of action for negligent mishandling of a corpse. The trial court relied upon *McCoy v. Ga. Baptist Hosp.*, 167 Ga. App. 495, 497 (306 SE2d 746) (1983), in reaching such conclusion. According to *McCoy*, a claim for negligent mishandling of a corpse is premised upon the presence of two elements. "The first is the 'quasi-property' right that exists in the dead body of a relative. The second is the negligent breach of a contract to carry out the expressed wishes of the next of kin regarding the disposition of that dead body[, i.e., burial, cremation, or anatomical donation]. See generally *Rivers v. Greenwood Cemetery*, 194 Ga. 524 (22 SE2d 134) (1942)." *McCoy*, supra at 497.

In this case, the trial court correctly determined that the first element was satisfied, since the plaintiffs were the decedent's next of kin. As to the second element, the trial court found that "all relevant precedent indicates that the Plaintiffs must show the existence of some agreement where the family members of the decedent

expressed their wishes regarding the disposition of the decedent's body." See also *Louisville &c. R. Co. v. Wilson*, 123 Ga. 62, 70-71 (51 SE 24) (1905) (*"Wilson"*); *McCoy*, supra; *Mayer v. Turner*, 142 Ga. App. 63 (234 SE2d 853) (1977). The trial court determined that the plaintiffs were unable to establish that they had entered into an express or implied agreement with the hospital regarding the disposition of Mrs. Parr's body prior to their visit to the hospital to see the body. Accordingly, the trial court granted summary judgment to the hospital.

In challenging the trial court's ruling, the plaintiffs point to language from *McCoy* which states that "[t]here exists a legal duty, *enforceable by the next of kin*, which requires that a party contractually obligated to handle a corpse, do so nonnegligently and with utmost dignity." (Citations and punctuation omitted; emphasis supplied.) Id. at 497; see also *Wilson*, supra at 63, 66-67; *Mayer v. Turner*, supra. However, under such cases, the next of kin must be known and have asserted some proprietary interest in the corpse, and the defendant must have had a reasonable opportunity to comply with such expressed wishes after pronouncement of the cause of death, autopsy, postmortem investigation, or embalming. See *Wilson*, supra at 65-66. Such property right in a dead body is "subject of course to the necessity for proper disposition, and not to allow it to become a nuisance or injurious to the public welfare[.]" *Wilson*, supra at 68. *Wilson* discussed cases of dissection, dismemberment, and disinterment; under the facts of that case, the body in its shroud and coffin was allowed to become "soaked and otherwise mutilated." *Wilson*, supra at 63. *Mayer v. Turner*, supra at 64, used the language of handling the corpse "with utmost dignity," referring to *Wilson*. *Mayer v. Turner*, supra at 64, dealt with the knowing temporary burial of the body during the funeral in the wrong burial site. None of the cases dealt with the handling of the corpse immediately after death and prior to preparation for burial at a funeral home.

The plaintiffs assert that a contract for care of Mrs. Parr was created when she was transferred to Barrow Medical Center and the hospital undertook to provide emergency care, and that a duty arose under the contract to treat her body, after her death, "nonnegligently and with utmost dignity."

However, we reject the plaintiffs' argument and affirm the trial court's determination that the plaintiffs have no standing to assert a violation of their personal, quasi-property rights to a corpse for any omission by the hospital that occurred prior to the time when the plaintiffs entered into an express or implied contract for the handling, transportation, or disposal of such corpse or asserted a proprietary claim on the body. Therefore, there was no error in the trial court's grant of summary judgment.

However, even if a contract existed between the hospital and either Mrs. Parr or the plaintiffs, the plaintiffs are unable to show the violation of any general duty of care, such as that imposed by statute or common law, that would change the nature of this cause of action from a breach of contract to a tort. See OCGA § 51-1-1. The plaintiffs assert that Barrow Medical Center acted negligently when, in fact, the evidence showed that *no action* was taken within the hour following Mrs. Parr's death; it is undisputed that the condition of her body when the family members saw her at approximately 2:30 p.m. was the same as that at the time the coroner certified her death at 1:33 p.m. Accordingly, the plaintiffs are unable to show that Barrow Medical Center employees, through their inaction in the hour following Mrs. Parr's death, committed a tort by actively violating a general duty to the plaintiffs. OCGA § 51-1-1; *Orkin Exterminating Co. v. Stevens*, 130 Ga. App. 363 (203 SE2d 587) (1973); *R. F. Burton Co. v. Southern Marine Assoc.*, 130 Ga. App. 111 (202 SE2d 544) (1973); *American Oil Co. v. Roper*, 64 Ga. App. 743 (14 SE2d 145) (1941).

2. The plaintiffs also assert that Barrow Medical Center employees violated specific hospital policies regarding the care of deceased patients, as well as the standards of a hospital accrediting agency. According to the plaintiffs, Barrow Medical Center failed to abide by the first eight steps of their own policies regarding the procedures to be followed upon the death of a patient. Such policies read in part: "If it is determined that the [deceased] patient is not a coroner's case,[1] the following steps are to be taken:

1. Close the patient's eyes.
2. Replace dentures in the patient's mouth.
3. Place a pillow under the patient's head or elevate the head of the bed slightly.
4. Remove any appliance, tubings, and dressings (if possible).
5. Bathe if necessary.
6. Cover body with sheet.
7. Ensure room is neat.
8. Adjust lights to a subdued level."

The plaintiffs assert that violations of these policies constitute negligence per se under OCGA § 51-1-6. See *St. Mary's Hosp. v. Radiology Prof. Corp.*, 205 Ga. App. 121, 127 (3) (c) (421 SE2d 731) (1992). The trial court properly rejected that assertion, finding that "[n]either the [accreditation organization's] standards nor Barrow

---

[1] Although Mrs. Parr was examined by the coroner due to the fact that she died within 24 hours of arrival at the hospital, the coroner completed his examination of Mrs. Parr and signed the death certificate at 1:33 p.m. Accordingly, this evidence indicates that Mrs. Parr was no longer considered a "coroner's case" for the purposes of application of hospital policies.

Medical's policy concerning the steps to be taken after a patient's death was imposed upon Barrow Medical Center by a statutory enactment or common-law principle. Such protocols and procedures do not have the force and effect of a statute or an administrative regulation. The Court of Appeals has repeatedly held that 'violations of private guidelines do not establish negligence per se.' [Cits.]" See *Butler v. South Fulton Med. Ctr.*, 215 Ga. App. 809, 812 (2) (452 SE2d 768) (1994); *Schofield v. Hertz Corp.*, 201 Ga. App. 830, 831 (412 SE2d 853) (1991); *Luckie v. Piggly-Wiggly Southern*, 173 Ga. App. 177, 178 (325 SE2d 844) (1984) ("Privately established 'rules are admissible as illustrative of negligence, but the violation of such a rule is not negligence in and of itself.' [Cits.]"). Accordingly, there was no error.

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED NOVEMBER 6, 1998.

*E. Graydon Shuford & Associates, E. Graydon Shuford, Norman H. Cuadra*, for appellants.

*Long, Weinberg, Ansley & Wheeler, Earl W. Gunn, Ashley P. Nichols*, for appellee.