A99A1798. CLARK v. CHOREY, TAYLOR & FEIL, P.C.
(522 SE2d 472)

ELDRIDGE, Judge.

Plaintiff Dannice Clark appeals from the Fulton County State Court's grant of summary judgment to defendant law firm Chorey, Taylor & Feil, P.C.

The facts, viewed in a light most favorable to Clark as non-movant,[1] are as follows: In April 1996, co-defendant Wanda Chatham was employed by the law firm of Vincent, Chorey, Taylor & Feil, P.C. ("Vincent Chorey"). At that time, certain lawyers from Vincent Chorey already had decided to leave the firm and establish a new law firm. The new firm already had been incorporated in February 1996 as Vincent, Berg, Stalzer & Menendez, P.C. ("Vincent Berg"), but had not yet opened an office or started serving clients. However, Vincent Berg had hired several employees of Vincent Chorey, including Chatham and her co-worker, Marsha Eggert. Chatham and Eggert began working for Vincent Berg in May 1996. Once Vincent Berg started operating as a separate entity, Vincent Chorey was renamed as

---

[1] *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

Chorey, Taylor & Feil, P.C. ("Chorey Taylor").[2]

On April 26, 1996, while Chatham was still employed with Vincent Chorey, Eggert asked Chatham "if she would be willing to do a favor" for Vincent Berg. At that time, according to Eggert, she was acting in her capacity as an employee of Vincent Chorey. "This favor involved delivering a check to BellSouth for the establishment of phone service for [Vincent Berg, and] Chatham volunteered to take the check to BellSouth." The check was drawn on the account of Vincent Berg. Chatham left the Vincent Chorey office "shortly before noon" and drove her own vehicle. There is nothing in the record to indicate that Chatham intended to perform any tasks during this trip other than deliver the check to BellSouth. On the way to the BellSouth office, Chatham's vehicle collided with Clark's.

In March 1998, Clark instituted a personal injury action against Chatham[3] and her employer at the time of filing the action, Vincent Berg.[4] On April 15, 1998, on Clark's motion, the trial court issued an order adding appellee Chorey Taylor as a co-defendant in the cause of action under the doctrine of respondeat superior.

Both law firms moved separately for summary judgment. The trial court granted both motions on September 22, 1998. Clark appeals from the grant of summary judgment to Chorey Taylor. *Held*:

In her sole enumeration of error, Clark contends that the trial court erred in granting summary judgment by finding that Chorey Taylor was not liable for damages arising from Chatham's negligence under the doctrine of respondeat superior.

Under OCGA § 51-2-2, a master is liable for torts committed by its servant "in the prosecution and within the scope of [its] business," whether the torts are committed intentionally or negligently. Notably,

[t]he expressions "in the scope of his business," or "in the scope of his employment," or similar words, have sometimes been given too narrow a meaning. A master rarely commands a servant to be negligent, or employs him with the expectation that he will commit a negligent or wilful tort; but if the act is done in the prosecution of the master's busi-

---

[2] There is no evidence in the record that the corporation of Vincent, Chorey, Taylor & Feil, P.C., dissolved upon the departure of the attorneys who subsequently formed Vincent Berg. See OCGA §§ 14-2-1401 et seq.; 14-7-1 et seq. Therefore, one could infer that the corporate entity survived intact and was renamed as Chorey, Taylor & Feil, P.C., the difference being only that certain employees left the firm.

[3] A prior suit against Chatham in the Superior Court of Paulding County was dismissed without prejudice on January 28, 1998.

[4] The suit charged Vincent Berg with liability under the doctrines of respondeat superior and borrowed servant.

ness, that is, if the servant is at the time *engaged in serving the master*, the latter will be liable.

(Citation and punctuation omitted; emphasis supplied.) *Digsby v. Carroll Baking Co.*, 76 Ga. App. 656, 658 (47 SE2d 203) (1948). See also *Randall Mem. Mortuary v. O'Quinn*, 202 Ga. App. 541, 543 (2) (414 SE2d 744) (1992); *Curtis v. Kelley*, 167 Ga. App. 118, 119 (305 SE2d 828) (1983). An act remains within the scope of employment, even if the act served both the master and some personal purpose of the servant, as long as such act was not a "total departure from the course of the master's business, so that the servant might be said to be on a frolic of his own," or otherwise was "entirely personal" to the servant. (Citations and punctuation omitted.) *Andrews v. Norvell*, 65 Ga. App. 241, 245 (15 SE2d 808) (1941) (finding the master liable for the servant's practical joke on another). Accord *Hobbs v. Principal Fin. Group*, 230 Ga. App. 410, 412 (497 SE2d 243) (1998) (finding that a master is not liable when a servant's tort is "entirely disconnected" from his employment); *Coffee Chrysler-Plymouth-Dodge v. Nasworthy*, 198 Ga. App. 757 (403 SE2d 453) (1991) (finding that the master is not liable when a servant's tort occurred during a "purely personal" mission); *Curtis v. Kelley*, supra at 119; *May v. Phillips*, 157 Ga. App. 630 (278 SE2d 172) (1981); *Sparks v. Buffalo Cab Co.*, 113 Ga. App. 528, 530 (148 SE2d 919) (1966); *Cooley v. Tate*, 87 Ga. App. 1, 4 (73 SE2d 72) (1952).

An additional criterion for determining whether an act was performed for the benefit of a master within the scope of employment is whether the master had the power to discharge the servant for failure to perform the task in an acceptable manner. *Redd v. Brisbon*, 113 Ga. App. 23, 24 (147 SE2d 15) (1966). In fact, the master's power to control and discharge the servant is one factor that distinguishes a servant from a mere volunteer. Id.

Generally, the question of whether the servant is, in fact, serving the master within the scope of employment at the time of an injury to another is an issue for determination by the jury, except in plain and indisputable cases. *Digsby v. Carroll Baking Co.*, supra at 660; see also *Randall Mem. Mortuary v. O'Quinn*, supra at 544 (2); *Southern Bell Tel. &c. Co. v. Conyers Toyota*, 190 Ga. App. 792, 793 (1) (380 SE2d 296) (1989). However, a defendant, as the moving party on a motion for summary judgment, may pierce the plaintiff's pleadings by demonstrating that there is no issue of material fact as to at least one essential element of the plaintiff's prima facie case. *Garrett v. NationsBank, N.A.*, 228 Ga. App. 114, 115 (491 SE2d 158) (1997). Even so,

a defendant may not prevail simply by presenting contradic-

tory evidence, as such evidence serves only to create an issue for jury resolution. . . . If the defendant is able to pierce the plaintiff's pleadings . . . the burden of *production* of evidence shifts to the plaintiff, i.e., the plaintiff will survive summary judgment by presenting *any* evidence which establishes a jury issue regarding that element. Even slight evidence will be sufficient to satisfy the plaintiff's burden of production[.]

(Citations and punctuation omitted; emphasis in original.) Id. at 115. See also OCGA § 9-11-56 (c), (e); *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991); *Stuckey Diamonds v. Jones*, 195 Ga. App. 351, 352 (393 SE2d 706) (1990). In determining whether the plaintiff, as non-movant, has met such burden,

all inferences, and all ambiguities, and all doubts, are resolved against the movant and in favor of the party opposing the grant of summary judgment. This is true even where the party opposing the motion would have the burden at trial. Furthermore, the respondent's proof is treated with indulgence. Vague or contradictory testimony must be construed in favor of the non-movant.

(Citations and punctuation omitted.) *McCoy v. Southern Bell Tel. &c. Co.*, 172 Ga. App. 26, 27 (2) (322 SE2d 76) (1984).

In this case, Chorey Taylor asserted on summary judgment that Chatham was not acting within the scope of her employment because (a) Chorey Taylor did not receive any benefit from her attempted delivery of the Vincent Berg check to BellSouth; and (b) Chorey Taylor did not control Chatham's actions, because she voluntarily performed this act as a "favor" to Vincent Berg.

(a) In reviewing the record, this Court notes that, in her response to Vincent Berg's motion for summary judgment, the plaintiff asserted that the beneficiary of Chatham's act was, in fact, Vincent Berg, not Chorey Taylor. However, it is clear from the record that some of the attorneys and other employees who directly benefited from Chatham's attempt to deliver the check to BellSouth were, at that time, still employed by Chorey Taylor (then Vincent, Chorey, Taylor & Feil, P.C.), although they were in the process of leaving to form Vincent Berg.

(b) Further, it is undisputed that both Chatham and Eggert were employed by Chorey Taylor on the date of the accident.[5] Eggert

---

[5] As such, the cases cited by both parties regarding Chatham's status as an independent contractor versus an employee are inapplicable herein. See, e.g., *Griffin v. Hardware Mut. Ins. Co.*, 93 Ga. App. 801, 804 (92 SE2d 871) (1956).

admitted in her affidavit that, when she asked Chatham to take the check to BellSouth, she acted in her capacity as a Chorey Taylor employee. Eggert also provided the address and location of the Bell-South office to Chatham.

From these facts, one could infer (a) that Chatham's attempted delivery of the check was not a purely personal pursuit or otherwise "entirely disconnected" from her employment; and (b) that such act was not entirely "voluntary," since her present employment with Chorey Taylor, as well as her future employment with Vincent Berg, could have been adversely affected if she failed to perform her "favor" properly.

These inferences are sufficient to send to the jury the question of whether Chatham was acting "in the prosecution and within the scope" of her employment with Chorey Taylor at the time of the collision. Accordingly, the trial court erred in granting summary judgment to appellee Chorey Taylor.

*Judgment reversed. McMurray, P. J., Barnes and Phipps, JJ., concur. Johnson, C. J., Pope, P. J., and Blackburn, P. J., dissent.*

BLACKBURN, Presiding Judge, dissenting.

As I cannot agree that Wanda Chatham was in any way acting for the benefit of Vincent, Chorey, Taylor & Feil, P.C. (Vincent, Chorey) at the time she collided with Dannice Clark, I must respectfully dissent from the opinion of the majority.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

*Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

So viewed, the record reveals that at the time of the collision, both Marsha Eggert and Wanda Chatham, who were employed by Vincent, Chorey, had already accepted employment with Vincent, Berg, Stalzer & Menendez, P.C. (Vincent, Berg), a new law firm established by several lawyers who were leaving Vincent, Chorey. In her affidavit, Marsha Eggert avers that she asked Chatham to do a favor for Vincent, Berg (their future employer) in connection with telephone service. Specifically, Eggert states that she asked Chatham to deliver a check to BellSouth Communications on behalf of Vincent, Berg. Her affidavit was given on April 3, 1998. Eggert began

her employment with Vincent, Berg on May 6, 1998. Eggert's affidavit conflicts with the interrogatory answers of Vincent, Berg, described below, in which it contends that no one asked Chatham to deliver the telephone company deposit.

While performing her task, Chatham rear-ended Clark's car. All of the evidence in this case establishes that Chatham was performing a favor for a co-worker and Vincent, Berg. Marsha Eggert stated, "I asked Ms. Chatham if she would be willing to do a favor for [Vincent, Berg]."

In its answers to Clark's interrogatories, Vincent, Berg indicated:

Ms. Chatham had volunteered to deliver a check to Bell-South Communications which represented a deposit for the establishment of [Vincent, Berg's] phone service for its new office. At the time of the incident, Ms. Chatham was on her way to BellSouth Communications [for Vincent, Berg]. Nobody asked Ms. Chatham to perform this task. Instead, Ms. Chatham volunteered to do so upon learning from Barrie Boyd and Marsha Eggert that [Vincent, Berg's] deposit check needed to be delivered to BellSouth.

Clark subsequently sued Vincent, Chorey and Vincent, Berg under the doctrine of respondeat superior.

The following facts are undisputed: (1) Chatham and Eggert were employed by Vincent, Chorey at the time of the accident; (2) Vincent, Berg had been incorporated prior to the time of the accident, although it had not officially opened for business; (3) Chatham and Eggert had accepted future employment with Vincent, Berg at the time of the accident; (4) the favor performed by Chatham was for the benefit of Vincent, Berg, not Vincent, Chorey; and (5) less than one month after the accident, Chatham and Eggert began working for Vincent, Berg.

Our Code states that every person shall be liable for torts committed by his servant by his command or in the prosecution and within the scope of his business. OCGA § 51-2-2. But, our appellate courts have followed a long line of authorities citing the general rule that in determining the liability of the master for the negligent or wilful acts of a servant, the test of liability is, not whether the act was done during the existence of the employment, but whether it was done within the scope of the actual transaction of the master's business for accomplishing the ends of his employment.

(Punctuation omitted.) *Wittig v. Spa Lady, Inc.,* 182 Ga. App. 689, 690 (356 SE2d 665) (1987).

In this case, it is clear that Chatham was not acting on Vincent, Chorey's behalf at the time of the accident. To the contrary, she was performing a favor which would directly benefit a competitor of Vincent, Chorey with whom she had already accepted employment. This competitor, Vincent, Berg, was an existing corporation at the time of the accident, even though the employees it had hired had not yet left Vincent, Chorey. It was solely for the benefit of Vincent, Berg that Chatham was acting.

> If a servant steps aside from his master's business to do an act entirely disconnected from it, and injury to another results from a doing of the act, the servant may be liable, but the master is not liable. Thus, a tort committed by a servant while engaged in the master's business is not necessarily a tort committed in the course of his employment and in the prosecution of the master's business. Where the tort of an employee is wholly personal to himself, it is not within the scope of his employment, and the master is not liable.

(Citations omitted.) Id. at 690.

In this case, Chatham performed a favor to benefit her future employer, Vincent, Berg. The trial court did not err in granting summary judgment to Chorey, Taylor & Feil, P.C. (Chorey, Taylor). The court necessarily found that Chatham's act neither related to the operations of Vincent, Chorey in any way nor benefited that firm. Chatham's actions were purely personal with regard to Vincent, Chorey, if not Vincent, Berg. No appeal has been taken from the trial court's grant of summary judgment to Vincent, Berg, the corporation for which Chatham was acting and from which she had accepted employment at the time of the subject collision, and we do not consider the validity of that ruling here. Under the majority's holding, Chorey, Taylor could be liable in a case in which Vincent, Berg, the corporation whose check was being delivered, has been held not liable as a matter of law. Vincent, Chorey cannot be held liable for Chatham's act under the doctrine of respondeat superior under the facts of this case. Id.

*Andrews v. Norvell,* 65 Ga. App. 241 (15 SE2d 808) (1941), which the majority cites to support its argument, does not change this result. In *Andrews,* the plaintiff sued the employer of a bartender who played a practical joke on him and induced him to sit on a certain stool in the bar covered with a caustic compound. As this practical joke was performed while completing the exact duties for which the bartender was hired, namely greeting customers and serving

drinks, this Court concluded that the bartender's employer could be held responsible for its employee's act under the doctrine of respondeat superior. Here, in direct contrast, Chatham was performing an act for an entirely separate corporation which related in no way to her duties as an employee of Vincent, Chorey. *Andrews* has no bearing on the outcome of this case.

The majority also relies on paragraph 6 of an affidavit prepared and submitted by Vincent, Berg in which its employee Eggert, states:

> As part of its preparations to commence business, [Vincent, Berg] needed to establish phone services at its new offices. I asked Ms. Chatham if she would be willing *to do a favor for [Vincent, Berg]*. I did this in my capacity as an employee of Vincent, Chorey. This favor involved delivering a check to BellSouth for the establishment of phone service for [Vincent, Berg]. Ms. Chatham volunteered to take the check to BellSouth.

(Emphasis supplied.)

Specifically, the majority focuses on Eggert's statement that she was acting in her capacity as a Vincent, Chorey employee when the favor was requested. However, this statement must be viewed in context. Eggert and Chatham had each already accepted employment with Vincent, Berg at the time of this incident. There is no evidence that any agent of Vincent, Chorey either requested or ratified Eggert's actions in this case, or that there was any benefit to Vincent, Chorey from the delivery. Moreover, Eggert's employment with Vincent, Chorey at the time of the accident is not controlling. Irrespective of Eggert's employment with Vincent, Chorey, Chatham was performing a personal favor exclusively for the benefit of her future employer, Vincent, Berg, and, as discussed above, this fact precludes a finding of any liability by Vincent, Chorey.

The trial court properly granted summary judgment to Vincent, Chorey.

I am authorized to state that Chief Judge Johnson and Presiding Judge Pope join in this dissent.

DECIDED SEPTEMBER 9, 1999 —
RECONSIDERATION DENIED OCTOBER 5, 1999 —

*Rajan Bhandari*, for appellant.
*Carr, Tabb & Pope, Eric N. Van De Water*, for appellee.