## 69634. GETZ SERVICES, INC. v. PERLOE.
### (327 SE2d 761)

BEASLEY, Judge.

Defendant Getz appeals from a judgment for plaintiff Perloe for $35,000 actual damages and $20,000 punitive damages in an action for negligent termite inspection of Perloe's house. The case was tried before a jury following reversal of the granting of a motion for directed verdict. *Perloe v. Getz Exterminators*, 163 Ga. App. 397 (294 SE2d 640) (1982).

Perloe contracted to purchase a home. The contract required seller to "provide at time of closing . . . a 'LETTER OF INSPECTION' from a licensed pest control company stating that subject property was found to be free of termite infestation and/or structural damage caused by termites after having made a visual inspection in accordance with the 'Structural Pest Control Act' of the State of Georgia . . . ."[1]

Perloe had an engineer inspect the house prior to closing. The engineer stated in his report, "The buyer should be furnished a letter from a licensed exterminator re: termite infestation and/or damages [sic] at this time."

The seller hired Getz to inspect the house for termites. Defendant's salesman inspected the home on July 17, 1978, and found ac-

---

[1] OCGA Title 43, Ch. 45.

tive infestation and damage. Although the record is unclear, it appears that Defendant then sent a "treating crew" out to the home which remedied the active infestation problem before the July 20 closing. At closing, a termite clearance letter signed by one of defendant's managers was provided by seller to Perloe. It stated: "At your request, we have re-inspected the property . . . Based upon careful visual examination of accessible areas and upon sounding of accessible structural members, we report that at the time of such inspection, we found no evidence of subterranean termite or other wood-destroying insect infestation in the subject property, and, if such infestation previously existed it has been corrected and any damage due to such infestation has also been corrected or alternatively been fully disclosed as follows: NONE." This letter was issued based upon the July 17, 1978 inspection by Defendant's salesman.

Several months after moving into the house, when renovations began, plaintiff discovered termite damage and brought suit against defendant for negligent inspection of the premises or failure to disclose. He sought damages for lost rent, for the expense of repairing the termite damage, for the cost to avoid a previously executed contract for renovation, and for punitive damages.

1. Defendant asserts that the trial court erred in denying its motion for directed verdict with respect to plaintiff's claim for punitive damages and in charging the jury on this issue.

OCGA § 51-12-5 provides for punitive damages in certain circumstances, including those in which there was an entire want of care and a conscious indifference to consequences. *Southern R. Co. v. O'Bryan*, 119 Ga. 147 (1) (45 SE 1000) (1903); *Deavers v. Standridge*, 144 Ga. App. 673 (242 SE2d 331) (1978). The court so charged the jury.

" '(O)rdinarily the question of imposition of punitive damages is for the jury. However the controlling question . . . is whether there was any evidence to support [such an award].' " *Alliance Transp. v. Mayer*, 165 Ga. App. 344, 345 (301 SE2d 290) (1983).

Getz's own inspector reported active termite infestation and damage, and yet three days later Getz certified that there was neither infestation nor unrepaired damage. What was found was not disclosed, frustrating much of the purpose of the clearance letter. Thus, the issue of punitive damages was properly submitted to the jury. See *O'Bryan*, 119 Ga. 147, supra; *Morgan v. Hawkins*, 155 Ga. App. 836 (273 SE2d 221) (1980); *Gordon v. Ogden*, 154 Ga. App. 641 (269 SE2d 499) (1980); *Jackson v. Co-op Cab Co.*, 102 Ga. App. 688 (117 SE2d 627) (1960).

2. Defendant claims that the verdict was contrary to law and evidence and was strongly against the weight of the evidence.

The seller of the house contracted with Getz to inspect the house for termite infestation in order that the buyer would be provided a

clearance letter upon the sale. " 'It is axiomatic that a single act or course of conduct may constitute not only a breach of contract but an independent tort as well, if in addition to violating a contract obligation it also violates a duty owed to plaintiff independent of contract to avoid harming him. [Cits.] Such an independent harm may be found because of the relationship between the parties, or because of defendant's calling or because of the nature of the harm.' " *Gillis v. Orkin Exterminating Co.*, 172 Ga. App. 507 (323 SE2d 695) (1984). Plaintiff is "not barred from bringing a tort action for the violation of a duty flowing from relations between the parties which were created by contract. *City of Douglas v. Johnson,* 157 Ga. App. 618, 619 (278 SE2d 160) (1981).

Defendant owed a legal duty to plaintiff to meet the standard of care exercised by "ordinarily prudent persons under the same or similar circumstances." OCGA § 51-1-2.

One of plaintiff's expert witnesses testified that "the standard of care in the pest control industry for home inspection is to make a thorough inspection of a home . . . to make a qualified report as to what wood-destroying insects are visible in the home, what signs of wood-destroying insects are in the home, such as previous infestations, and any subsequent damage from any wood-destroying insects in the home . . . normal policy is to make an inspection report such as a graph, and indicate on that graph, in other words, something in writing, showing where these problems are. The Getz manager who signed the clearance letter even acknowledged the duty to disclose termite-caused damage. In his testimony at trial, he stated that if any damage had been reported to him he probably would not have even issued the clearance letter, but that if he knew the buyer would accept a letter with damage specified in the letter, he would outline the damage in the letter.

Here Getz's salesman discovered live infestation and damage during his July 17, 1978 inspection and recorded these findings on a graph which he then gave to his manager. Yet the Getz manager not only issued the termite clearance letter, but he did so with no mention of infestation or damage.

Even if defendant remedied and had no obligation to report the current infestation problem, a conclusion we do not make, it still had the duty to disclose termite-caused damage which still existed. This it did not do. Nor does defendant contend that the damage witnessed by its salesman was corrected by the time the clearance letter was issued. Thus, the jury could find that defendant failed to meet the standard of care owed.

*Holbrook v. Burrell,* 163 Ga. App. 529 (295 SE2d 201) (1982), cited by appellant, is distinguishable because plaintiffs there failed to show that termite infestation existed at the time of the exterminator's

inspection, warranting a directed verdict. In the case at bar, defendant's employee testified that termite infestation was evident.

Defendant further asserts that even if it were negligent in issuing the clearance letter, it cannot be held liable because plaintiff was "aware of and had notice" of the infestation. Getz argues that had plaintiff exercised ordinary care "he could have avoided any damages incurred." This argument is without merit. Contrary to defendant's contentions, the record is devoid of evidence that plaintiff had notice of the infestation prior to the closing on the home. The record does not reflect defendant's position that the engineer who inspected the premises prior to closing notified plaintiff of the infestation. The engineer expressed no opinion as to the existence or non-existence of termite infestation and damage. He merely advised plaintiff to have a licensed pest control company inspect the house before closing.

Defendant also appears to argue that because plaintiff had himself inspected the house prior to closing, he had already discovered the infestation. Plaintiff testified that he did not know how to inspect for termite damage and that he relied upon the conclusion of Getz's inspection and would not have purchased the home had he known about the termite damage. Nowhere in the record is this testimony contradicted. Defendant cites *Moorman v. Williams*, 103 Ga. App. 726 (120 SE2d 312) (1961), for the proposition that even if the defendant was negligent, but the consequences of this negligence could have been avoided by the plaintiff's use of ordinary care, then recovery by plaintiff is barred. Here, however, there is no evidence that plaintiff failed to exercise ordinary care.

3. Defendant asserts that the verdict is against the weight of the evidence. Defendant has addressed this argument to the wrong forum. This court is limited to a consideration of the sufficiency of the evidence as a matter of law, not the weight of the evidence. *Hallford v. Banks*, 236 Ga. 472 (224 SE2d 35) (1976); *Young v. Jones*, 149 Ga. App. 819 (6) (256 SE2d 58) (1979). This enumeration presents nothing for review. Moreover, we have considered the evidence and, as the previous discussion indicates, we find sufficient evidence to support the verdict of the jury.

Under this same enumeration of error defendant infers that the damages awarded improperly included renovation costs. Where there is injury to a building, the measure of damages is the cost of restoration of the building to the original condition, unless restoration to the original condition would be an absurd undertaking. *Ga.-Carolina Brick &c. Co. v. Brown*, 153 Ga. App. 747, 756 (266 SE2d 531) (1980). Costs of renovation, as opposed to restoration, are not recoverable. Although renovations were done at the same time as the termite repair, evidence presented of costs incurred did not combine repairs and renovations under one grand total. The contractor who per-

formed the work testified that the cost of termite repair totaled $34,362.50, while the cost of renovation, which did not include the cost of termite repair, exceeded $69,000.

Defendant further alleges under this enumeration that plaintiff did not "take the steps required by law for him to minimize his damage." It claims that because the repairs were not made until 1984, the costs incurred for repairs were much higher than if the repairs had been undertaken in 1978 when the damage was discovered, "due to double digit inflation and rapid rises in cost, both of material and labor." The appropriate measure of the repair costs plaintiff is entitled to recover is that which would have been incurred had the repairs been undertaken upon the discovery of the damage in 1978, not the cost of repairs as incurred in 1984. See *Brown,* 153 Ga. App. 747, 756, supra. Although there was some evidence that there were increases but they were indeterminable, a witness for plaintiff testified that the cost of repair when incurred in 1982 was relatively the same as it would have been if the work had been done in 1978. Defendant produced no concrete evidence in support of its contention. The question was up to the jury. Defendant's statement that appellant at no time produced any evidence of the cost to repair the termite damage in the year 1978 is contradicted by the record.

4. Defendant asserts that the trial court erred in allowing plaintiff to testify over objection as to damages for lost rent because his testimony was too "uncertain, speculative and remote" to be admissible, and since this was the sole basis for the amount of damages for lost rent, none was awardable.

Lost profits, i.e., lost rental income, is recoverable as damages if shown with reasonable certainty. *DeVane v. Smith,* 154 Ga. App. 442 (268 SE2d 711) (1980).

The question of value is a matter of opinion, OCGA § 24-9-66, and as to questions of opinion, a witness may swear to his opinion giving his reasons therefor, OCGA § 24-9-65. Testimony regarding the market value of property is " 'not to be excluded merely because the valuation fixed by the witness as a matter of opinion depends upon hearsay.' " *Four Oaks Properties v. Carusi,* 156 Ga. App. 422, 424 (274 SE2d 783) (1980). An owner need not be an expert to testify: "The owner of property is considered to be qualified to state his opinion as to value . . . . 'Opinion evidence as to the value, . . . in order to have probative value, must be based upon a foundation that the witness has some knowledge, experience or familiarity with the value . . . and he must give reasons for the value assessed and also must have had an opportunity for forming a correct opinion.' " *Maddox v. State,* 157 Ga. App. 696, 697 (278 SE2d 480) (1981). Whether a witness has established sufficient opportunity for forming a correct opinion or has stated a proper basis for expressing an opinion is a decision

to be made by the trial court, and this decision will not be disturbed absent an abuse of discretion. *Dept. of Transp. v. McLaughlin*, 163 Ga. App. 1 (292 SE2d 435) (1982).

In the present case, plaintiff's calculations as to lost rental value were based on previous rental fees, on advertisements in local papers for the rent of apartments of similar size and location, on phone calls made, on "driving by units" that he thought were comparable "to find out what they were renting for," and on rental fees subsequently collected. Defendant had the opportunity to cross-examine plaintiff and to introduce its own evidence to contradict plaintiff's testimony but chose not to. For these reasons, we find no error in allowing plaintiff to testify as to lost rental income.

5. Defendant next asserts that the trial court erred in admitting into evidence plaintiff's exhibit five, a check that plaintiff paid to a contractor as liquidated damages to avoid a contract for renovations on his home because neither he nor the contractor knew of the termite damage when they contracted, and the existence of the damage would have required more extensive work than the contractor had undertaken to do.

Defendant first contends that the check has no value other than what plaintiff had already testified to. We do not find this a ground for exclusion. "[T]here is no rule that where the preparer of a document is in court his testimony is the best evidence and not the document; the rule is that the preparer's presence does not render the document inadmissible. [Cits.] There is no validity to the argument that simply because the witness had already testified to the figures . . ., this denied the actual documents any probative value which could enlighten the jury or would otherwise give undue emphasis to the testimony. The trial court may properly exercise his discretion in admitting what in effect is explanatory evidence and at worst is cumulative. If evidence is admissible for a lawful purpose, its admission will not constitute cause for a new trial." *Dept. of Transp. v. Delta Machine Prods. Co.*, 157 Ga. App. 423, 426 (278 SE2d 73) (1981). In fact, "[w]here checks and vouchers are accessible, they are the best evidence of the expenses sought to be recovered." *Consolidated Engineering Co. v. U.I.R. Contractors*, 136 Ga. App. 923, 924 (222 SE2d 692) (1975).

Defendant next asserts that the damage represented by the check was not a "proper measure of damage," that it has no liability for contractual obligations between plaintiff and third parties. Defendant, however, is liable for all damages which "flow from any tortious act." OCGA § 51-12-2. Consequential damages which are the necessary and connected effect of a tortious act are recoverable even though they are to some extent dependent upon other circumstances. *Kroger Co. v. Perpall*, 105 Ga. App. 682 (125 SE2d 511) (1962).

Whether the damages plaintiff sought were proximately caused by the negligence of defendant was a question properly submitted to the jury. See *Atlanta Gas Light Co. v. Mills*, 78 Ga. App. 690 (51 SE2d 705) (1949); *Vizzini v. Blonder*, 165 Ga. App. 840, 841 (303 SE2d 38) (1983).

Defendant also argues that the check was improperly admitted because the contractor to whom the check was issued was not called by plaintiff to testify, and therefore defendant had no opportunity to cross-examine the contractor "to find out exactly" what the payment was for. Defendant has cited no authority, and we know of none to support its argument. Perloe authenticated the check, and he was subject to cross-examination as to its representations. Defendant could have introduced its own evidence to contradict Perloe's testimony regarding what the check represented, yet it did not.

Admission of plaintiff's exhibit five into evidence was not error.

6. Plaintiff's motion for damages for a frivolous appeal under OCGA § 5-6-6 is denied. While defendant's appeal is not meritorious, it is not "so palpably without merit as to admit of no other conclusion than that it was filed for purposes of delay." *Great A. & P. Tea Co. v. Burgess*, 157 Ga. App. 632, 633 (278 SE2d 174) (1981).

*Judgment affirmed. Birdsong, P. J., and Carley, J., concur.*

DECIDED FEBRUARY 25, 1985.

*Clifford H. Hardwick, John J. Jones*, for appellant.
*E. Marcus Davis*, for appellee.