73823. NORTH ALABAMA ENTERPRISES, INC. v. CAP'N SAM'S CRUISES, INC. et al.
(353 SE2d 578)

DEEN, Presiding Judge.

North Alabama Enterprises, Inc. brought suit against Cap'n Sam's Cruises, Inc. to recover the alleged default in payment of three $50,000 notes which it contends were given by Cap'n Sam's Cruises and guaranteed by Samuel and Leola Stevens in connection with the purchase of a riverboat, The Alabama Star. Appellees answered, denied the validity of the notes, pleaded the affirmative defenses of payment, accord and satisfaction, and novation. They also counterclaimed alleging a breach of warranty for certain alleged defects. At trial, the court directed a verdict against Cap'n Sam's counterclaim and denied North Alabama's motion for a directed verdict as to appellees' affirmative defenses. The jury returned a verdict in favor of Cap'n Sam's Cruises. North Alabama appeals following the denial of its motion for a new trial or, in the alternative, for a judgment notwithstanding the verdict. In its first two enumerations of error, appellant contends that the court below erred in denying the motion for a j.n.o.v. because appellees failed to prove one of their three affirmative defenses and because there was insufficient evidence to support any of the affirmative defenses.

The evidence showed that in early 1982, an agreement was

reached between the parties that North Alabama Enterprises would sell The Alabama Star to Cap'n Sam's Cruises. Four days prior to the scheduled closing in Savannah, Georgia, Captain Stevens and Leroy Evans, a vice-president of Cap'n Sam's Cruises, went to Alabama to meet with Clete Quick, the president of North Alabama Enterprises, and his attorney to discuss the closing of the sale of the riverboat. During this meeting Captain Stevens signed three promissory notes, each in the amount of $50,000, in favor of North Alabama Enterprises on behalf of Cap'n Sam's Cruises and individually. Each note was subject to a handwritten addendum which set forth two conditions: (1) that the closing take place in Savannah on February 19, 1982, and (2) that the notes are satisfactory to Captain Stevens' attorney. The notes were due on July 1, 1983, January 1, 1984, and July 1, 1984, respectively. Neither Captain Stevens nor Mr. Evans mentioned the notes to their closing attorney and the closing took place as scheduled.

It appears that the controlling issue as to the validity of these notes centers around the actual purchase price for the sale of the riverboat. Appellees contend that the purchase price was approximately $800,000 and that this figure was arrived at when the sale was closed by his company's refinancing of the first ship's mortgage of $692,270.08, to a first ship's mortgage of $400,000, plus the execution of a new note for $235,000 by Cap'n Sam's Cruises and the difference of $57,270.08 paid to the bank in cash. A ship's second mortgage was given to a Pennsylvania investor who agreed to guarantee the bank notes. Cap'n Sam's also gave North Alabama $34,000 in cash plus a note for $66,000 which was to be paid in two installments. Captain Stevens and his wife, Leola, also gave North Alabama a general continuing guaranty in which they agreed to pay the full indebtedness owed by Cap'n Sam's Cruises.

North Alabama Enterprises, however, contends that the actual purchase price was $942,000. The president of North Alabama contends that the alleged $150,000 difference was evidenced by the three promissory notes which were part of a secret side deal for the sole benefit of the appellees who wished to keep the additional purchase price secret from its guarantor, the Pennsylvania investor. The evidence at trial showed that North Alabama was experiencing severe financial difficulties, that it was delinquent by several months in its mortgage payments, and that the vessel was the only asset of the corporation. Mr. Quick testified at trial that liquidation of the vessel was necessary to pay off outstanding creditors of the corporation and to reimburse the stockholders for their investments. Further testimony revealed that approximately $110,000 of the alleged balance would be paid to Mr. Quick to reimburse him for his investment, but he had worked out an agreement with his creditors prior to closing that they

would receive only 20% of their respective debts from the closing proceeds, with additional payments in the future as Cap'n Sam's Cruises paid off the $66,000 note. In actuality only 13.3% of that money was paid to creditors and they were never told of the existence of the three $50,000 promissory notes. Corporate minutes executed by Quick and other stockholders verified the purchase price at just under $800,000.

No written contract was introduced at trial to verify the alleged purchase price claimed by North Alabama. A memorandum, however, was introduced into evidence which is alleged to have been delivered to Cap'n Sam's Cruises which shows a purchase price of $942,000. Quick was questioned as to the fortuitous discovery of this document because he had been questioned at three separate times during his deposition as to any evidence of the indebtedness that might be in his possession and he responded in the negative to inquiries concerning the existence of a contract "or any other writing" evidencing the terms of the transaction. He admitted that the execution of the three promissory notes was in the nature of an "agreement to agree" and that final agreement on the disbursement, among other things, would take place in Savannah. By deposition, Mr. Quick also stated that the bank's attorney and bank officer were aware of the "under-the-table" deal, but at trial both testified that they had no knowledge of the existence of such an agreement.

The attorney for Cap'n Sam's guarantor who also represented the bank's interests testified that the closing was extremely complicated and confusing and that he could not pin down the terms of the sale until it was concluded; that the actual purchase price was not arrived at until the closing; and that it was important to ascertain and make arrangements to pay the maritime liens against the vessel so that it could be transferred free and clear without fear of attachment. These funds were used to pay creditors rather than Mr. Quick. Cap'n Sam's attorney also testified that the closing was chaotic and that the terms of the transaction could not be determined until the closing had been concluded. He also confirmed the assignment of sufficient funds to pay the maritime liens. One of the documents introduced into evidence was identified by one of the attorneys as the insurance binder taken out by Cap'n Sam's Cruises showing the bank as loss payee. It was a standard hull policy and insured the vessel in the amount of $800,000. Both of the attorneys agreed that no one at closing ever mentioned the existence of the three $50,000 promissory notes or a purchase price of $942,000 and that the agreement fashioned on February 19, 1982, was the complete agreement between the parties to the best of their knowledge. The evidence also showed that when Cap'n Sam's Cruises paid off the $66,000 note in favor of North Alabama approximately twenty-four months after closing, North Ala-

bama cancelled and released the third mortgage. It was only at this point that appellant sought to make a claim for the additional $150,000.

1. It is undisputed that the approximate sum of $800,000 has been paid for The Alabama Star. The sole question for jury resolution was whether this amount represented the full purchase price for the vessel. The jury's verdict indicates that it found that it was the full purchase price. Captain Stevens testified and the jury evidently found that he agreed to pay $800,000 for the riverboat and that notes in the amount of $150,000 were executed and accepted by appellant as partial payment. The terms of the sale changed when the parties sat down at the closing in Savannah. These changes required Captain Stevens to bring cash to the closing in the amount of $34,000 for assignment to North Alabama's creditors and to execute a note for $66,000 for assignment to appellant's creditors. Delay in closing caused an additional $50,000 in interest to accrue. The first mortgage held by the bank was reapportioned. As a result, the promissory notes held by appellant were merged with the closing of the sale.

When this evidence is taken with the testimony of the closing attorneys, the jury was authorized to find that the complete agreement for the sale of the riverboat was negotiated at closing and that the parties agreed to all of the terms and that Cap'n Sam's Cruises had made payment in full. The execution of a new agreement may also amount to a satisfaction of the former agreement where the new agreement is expressly agreed to by the parties or, in the absence of an express agreement, where the new promise is founded on a new consideration. OCGA § 13-4-101. Whether there is an accord and satisfaction is generally a question for the jury. *Woodstock Rd. Investment Properties v. Lacy*, 149 Ga. App. 593 (254 SE2d 910) (1979). As the money being paid by Cap'n Sam's Cruises had to be paid in a different manner and on shorter terms than the original promissory notes, it is evidence sufficient to support a new consideration. See *Computer Maintenance Corp. v. Tilley*, 172 Ga. App. 220 (322 SE2d 533) (1984).

2. As appellant did not raise any objections to the charge in the court below, it cannot be heard to complain of an alleged error on appeal. *Kirk v. State*, 168 Ga. App. 226 (308 SE2d 592) (1983). Indeed, counsel commented that he "thought it was a very fair charge."

3. The trial court did not err in refusing to allow Mr. Quick to testify as to the value of The Alabama Star. The court held that counsel had to lay a foundation before Mr. Quick could testify as to the value of the riverboat. Counsel then replied: "He is a shareholder in the company and as I understand it, the owner of a business is entitled to give statement or opinion as to the value of his assets." The court sustained the objection. Pursuant to OCGA § 24-9-66, one

need not be an expert or dealer in the article in question in order to testify as to value provided that "he has had an opportunity for forming a correct opinion." The witness must be familiar with the value of the kind of property involved. His qualification to testify rests largely within the discretion of the court. *Central Ga. Power Co. v. Cornwell*, 139 Ga. 1 (76 SE 387) (1912). See also *Getz Svcs. v. Perloe*, 173 Ga. App. 532, 536 (327 SE2d 761) (1985); *Dept. of Transp. v. McLaughlin*, 163 Ga. App. 1 (292 SE2d 435) (1982). As no foundation was laid by counsel to elicit the witness' knowledge, experience or familiarity with the value of the riverboat, the court did not err in refusing to permit him to give such testimony.

*Judgment affirmed. Birdsong, C. J., and Pope, J., concur.*

DECIDED JANUARY 27, 1987 —
REHEARING DENIED FEBRUARY 10, 1987 — 

*Richard J. Harris, Randolph H. Donatelli*, for appellant.
*Barnard M. Portman, Paul H. Felser*, for appellees.