## 77692. HORNE'S PEST CONTROL COMPANY, INC. v. ELLIOTT.
## 77693. TERMINIX SERVICE, INC. v. ELLIOTT.
(378 SE2d 734)

McMURRAY, Presiding Judge.

Plaintiff Eunice B. Elliott brought this "wood infestation" suit against Terminix Service, Inc., d/b/a Wright/Terminix Service ("Terminix") and Horne's Pest Control Company, Inc. ("Horne's"). She alleged that Terminix negligently inspected a house which she purchased in the summer of 1985; that Horne's negligently inspected the house, too; and that Horne's negligently repaired the house. Special damages and punitive damages were sought against each defendant. Answering the complaint, defendants denied they were liable to plaintiff.

At the close of the evidence, defendants moved for a directed verdict on the ground, inter alia, that plaintiff failed to prove damages. The motion was denied and the case was submitted to the jury.

The jury returned a verdict in favor of plaintiff and against defendants for special damages, in the amount of $9,132.55, and punitive damages, in the amount of $50,000. Judgment was entered accordingly. Following the denial of their motions for new trial or, alternatively, their motions for judgment notwithstanding the verdict, defendants appealed. *Held*:

Terminix inspected plaintiff's house before she purchased it in the summer of 1985. It delivered a "wood infestation report" to the seller of the house showing some structural damage. When the report was presented at closing, the closing was stopped. Thereupon, Horne's

was asked to inspect the house and to give an estimate for repairs. While the closing was being delayed, Horne's inspected the house and informed the seller that it would repair the house for $2,700. The seller hired Horne's to repair the house for that amount.

The closing was held in escrow pending receipt of a "clearance" letter from Horne's. Horne's rendered such a letter a few days later (even though it had not started work on the house) and the closing went through.

Shortly after Horne's completed the repairs, plaintiff realized that severe structural defects remained. In fact, the damage to plaintiff's house was far more extensive than either Terminix or Horne's had indicated.

In December 1985 a general contractor gave plaintiff an estimate to repair the house. He did not go underneath the house at that time. Rather, he prepared the estimate based upon what plaintiff told him needed to be done. (The contractor did go under the house in 1987 and 1988. And while he believed the structural damage which he observed on those occasions had been there for a long time, he admitted that he had no way of knowing conditions under the house in the summer of 1985. As he put it, parts of the house could have been different, parts not.)

The contractor's 1985 estimate was for $9,132.55. (The contractor also submitted an estimate of over $49,000 based on his visit to plaintiff's house in 1988. This estimate was much higher than the 1985 estimate because it called for more extensive repairs pursuant to the recommendations of a consulting engineer. The trial court would not permit the jury to consider the 1988 estimate.) The repairs which were to be made pursuant to the 1985 estimate were basically "cosmetic."

One price appears at the bottom of the 1985 estimate sheet. The price included such items as new kitchen countertops, doors, wallpaper and painting, in addition to replacing hardwood floors, subfloors, and sheetrock.

"A jury must be able to calculate the amount of damages from the data furnished and it cannot be placed in a position where an allowance of loss is based on guesswork." *General Warranty Corp. v. Cameron-Hogan, Inc.*, 182 Ga. App. 434, 437 (4) (356 SE2d 83). In cases of this kind, the measure of damages is the cost of restoring the house to its original condition, unless, of course, the cost of restoration is unreasonable. *Getz Svcs. v. Perloe*, 173 Ga. App. 532, 535 (3) (327 SE2d 761). In this regard, it must be shown what such costs would have been upon the discovery of the damage — subsequent restoration costs are immaterial. *Getz Svcs. v. Perloe*, 173 Ga. App. 532, 536, supra; *Georgia-Car. Brick &c. Co. v. Brown*, 153 Ga. App. 747, 756 (266 SE2d 531). Moreover, the costs of renovating a home, as op-

posed to restoring it, cannot be recovered. *Getz Svcs. v. Perloe*, 173 Ga. App. 532, 535, supra.

Looking at the 1985 estimate one cannot discern whether the items listed thereon were to be for restoration or renovation. (Were new kitchen countertops to be installed for restoration purposes?) And plaintiff offered no evidence in this regard. Thus, plaintiff failed to provide sufficient data to enable the jury to determine without speculating the special damages stemming from defendants' alleged negligence.

Where neither general nor nominal damages are sought and the special damages alleged are not proven, punitive damages are not recoverable. *Beverly v. Observer Pub. Co.*, 88 Ga. App. 490 (77 SE2d 80); *Daiss v. Woodbury*, 163 Ga. App. 88 (293 SE2d 876). Since plaintiff did not seek general or nominal damages and she failed to prove alleged special damages with the required specificity, she was not entitled to recover punitive damages against defendants. It follows that the verdict and judgment must be set aside. The trial court erred in failing to grant defendants' motions for new trial, or alternatively, their motions for judgment notwithstanding the verdict.

Although plaintiff did not prove the amount of special damages with the requisite degree of specificity, she did show that she was damaged in some (albeit unspecified) amount. Accordingly, we will exercise our discretion to meet the ends of justice and order that a new trial be had. OCGA § 9-11-50 (e). See *Roland v. Byrd*, 163 Ga. App. 408, 411 (294 SE2d 626).

*Judgment reversed in each case with direction. Pope and Benham, JJ., concur.*

DECIDED FEBRUARY 16, 1989.

*Bush, Wallace & Craig, Daniel J. Craig*, for appellant (case no. 77692).

*Michael W. Millians*, for appellant (case no. 77693).

*Stephen E. Curry, Scott J. Klosinski*, for appellee.