A99A1927. BAUER et al. v. NORTH FULTON MEDICAL CENTER, INC.
(527 SE2d 240)

BLACKBURN, Presiding Judge.

In this action regarding the alleged removal of eye tissue from a corpse without permission, Rosemary Bauer, in her individual capacity and as administratrix of the estate of Joseph Bauer, appeals the trial court's dismissal of her claims against North Fulton Medical Center, Inc. (North Fulton Hospital) for breach of contract, fraud, intentional infliction of emotional distress, property damage to a corpse, and violation of OCGA § 31-23-6. The trial court determined that all of Bauer's claims were barred by the statute of limitation for medical malpractice actions and personal injury actions. OCGA §§ 9-3-33; 9-3-71. We find that: (1) the statute of limitation for medical malpractice actions is not applicable to Bauer's claims; (2) to the extent Bauer's claims seek redress for personal injury, they were properly dismissed by the trial court pursuant to OCGA § 9-3-33; (3) Bauer's claims for breach of contract and property damage should not have been dismissed, although Bauer's measure of recovery is restricted due to the limited nature of her quasi-property right in her husband's corpse; (4) Bauer has not alleged an actionable claim of fraud against North Fulton Hospital; and (5) Bauer does not have a separate cause of action against North Fulton Hospital pursuant to OCGA § 31-23-6.

The record shows that Joseph Bauer was taken to North Fulton Hospital while having a heart attack. Mr. Bauer died at the hospital, and Mrs. Bauer was asked whether she wanted to make a donation of any of Mr. Bauer's organs, including his eyes. Mrs. Bauer declined. The parties dispute whether or not some other family members may have verbally consented. No organ donation form was signed by any of Mr. Bauer's relatives. Nevertheless, Mr. Bauer's corneal tissue was later removed by Georgia Eye Bank, Inc., an organ harvesting company.

More than two but less than four years later, Mrs. Bauer sued North Fulton Hospital and Georgia Eye Bank for the unauthorized removal of eye tissue from her husband's corpse. North Fulton Hospital subsequently moved to dismiss Bauer's claims, contending that they had been made outside the period allowed by the applicable statute of limitation for medical malpractice and personal injury actions. The trial court granted North Fulton Hospital's motion, and Bauer appeals from this order.

1. The trial court determined that the bulk of Bauer's claims fell under the aegis of the medical malpractice statute. See OCGA § 9-3-70. This statute, however, governs medical procedures and services offered to living patients, and it is therefore not applicable in this case, which involves no issue of medical services provided to such a patient.

In relevant part, OCGA § 9-3-70 defines an action for medical malpractice as: "any claim for damages resulting from the *death of or injury* to any person arising out of . . . [c]are or service rendered by any . . . private hospital . . . or by any officer, agent, or employee thereof acting within the scope of his employment." (Emphasis supplied.) On its face, this provision is inapplicable to procedures performed on a corpse. The statute clearly deals with improper care or services rendered to living patients, as it is an impossibility to kill or injure someone who is already deceased. What is involved here is injury to a corpse, not a person. Otherwise, the unauthorized invasion of a corpse would constitute a battery. Moreover, since Bauer has not asserted any medical malpractice claims, OCGA § 9-3-70 cannot govern her case.

2. The trial court also found, in the alternative, that Bauer's claims fell within the purview of the two-year statute of limitation for personal injury actions.

Generally, actions for injuries to the person must be brought within two years after the cause of action accrues. OCGA § 9-3-33. Therefore, to the extent that any of Bauer's claims seek redress for injuries personal to her, they would now be barred. For example, Bauer's claim for emotional distress fits squarely within this category, and it was properly dismissed. In addition, Bauer cannot receive compensation for her own distress and injuries through any of her remaining claims, whether based on tort, property, or contract law. To hold otherwise would allow Bauer to circumvent OCGA § 9-3-33.

We do not address the viability of Bauer's claim for emotional distress because such claim was not filed within the applicable two-year statute of limitation for personal injuries. We note that it is the public policy of this State to encourage organ donation, see, e.g., OCGA § 31-23-6. Hospitals and organ harvesting companies are statutorily protected from civil or criminal liability for the removal of eye tissue only if the removal was in accordance with the requirements of OCGA § 31-23-6 and not otherwise.

3. (a) To the extent that Bauer is suing to enforce property rights, however, her claims are subject to a four-year statute of limitation. "Actions for the recovery of personal property, or for damages for the conversion or destruction of the same, shall be brought within four years after the right of action accrues." OCGA § 9-3-32. There-

fore, Bauer's property claims were timely filed.

The underlying question then becomes what are the parameters of Bauer's property rights in the corpse of her husband. As Justice Lumpkin recognized:

> Death is unique. It is unlike aught else in its certainty and its incidents. A corpse in some respects is the strangest thing on earth. A man who but yesterday breathed, and thought, and walked among us has passed away. Something has gone. The body is left still and cold, and is all that is visible to mortal eye of the man we knew. Around it cling love and memory. Beyond it may reach hope. It must be laid away. And the law — that rule of action which touches all human things — must touch also this thing of death. It is not surprising that the law relating to this mystery of what death leaves behind can not be precisely brought within the letter of all the rules regarding corn, lumber, and pig-iron.

*Louisville &c. R. Co. v. Wilson*, 123 Ga. 62, 63 (51 SE 24) (1905).

Nevertheless, in order to respect "those sentiments connected with decently disposing of the remains of the departed which furnish one ground of difference between men and brutes," *Wilson*, supra at 64, this Court has consistently found that a decedent's next of kin has a personal, quasi-property right in his or her corpse to ensure its proper handling and burial.

> [I]n *Pollard v. Phelps*, 56 Ga. App. 408, 415 (193 SE 102, 107) (1937), the court held that "(a)t common law no property right was held to exist in a dead body; and though this view is still maintained in a strict sense, the courts of civilized and Christian countries regard respect for the dead as not only a virtue but a duty, and hold that, in the absence of testamentary disposition, a quasi property right belongs to the . . . next of kin." See also *Rivers v. Greenwood Cemetery, Inc.*, 194 Ga. App. 524, 525 (22 SE2d 134) (1942), wherein we held "that a dead body is quasi property over which the relatives of the deceased have rights which the courts will protect."

*Ga. Lions Eye Bank v. Lavant*, 255 Ga. 60, 61 (1) (335 SE2d 127) (1985).

> *McCoy* [*v. Ga. Baptist Hosp.*, 167 Ga. App. 495, 497 (306 SE2d 746) (1983)] states that "(t)here exists a legal duty, *enforceable by the next of kin*, which requires that a party contractually obligated to handle a corpse, do so nonneg-

ligently and with utmost dignity." . . . [U]nder such cases, the next of kin must be known and have asserted some proprietary interest in the corpse, and the defendant must have had a reasonable opportunity to comply with such expressed wishes after pronouncement of the cause of death, autopsy, postmortem investigation, or embalming.

*Wages v. Amisub of Ga.*, 235 Ga. App. 156, 158 (508 SE2d 783) (1998).

The quasi-property right in a corpse is not pecuniary in nature, nor should it be. The right encompasses only the power to ensure that the corpse is orderly handled and laid to rest, nothing more. One need only imagine the absurd and morbid process of determining the replacement value of body parts to understand the wisdom behind this rule. While it may be true that our laws must govern the funeral procession of a corpse, it will not impose a pecuniary value on the flesh itself. To do so would make the strangest thing on earth that much stranger.

As Professor Prosser has stated:

In most [cases involving the mishandling of dead bodies], the courts have talked of a somewhat dubious "property right" to the body, usually in the next of kin, which did not exist while the decedent was living, cannot be conveyed, can be used only for the one purpose of burial, and not only has no pecuniary value but is a source of liability for funeral expenses. It seems reasonably obvious that such "property" is something evolved out of thin air to meet the occasion, and that it is in reality the personal feelings of the survivors which are being protected, under a fiction likely to deceive no one but a lawyer.

Prosser, The Law of Torts, 58-59 (4th ed. 1971).

With this in mind, we analyze the type of damages which can be recovered pursuant to Bauer's property claims of conversion and improper bailment of her husband's corpse and body parts. Generally, "[f]or personalty unlawfully detained, the plaintiff may recover a sum in the amount of the highest value which he is able to prove existed between the time of the conversion and the trial." OCGA § 44-12-152. Bauer, however, has no pecuniary interest in her husband's corpse, and, accordingly, Mr. Bauer's corneal tissue is not subject to valuation in this context. Therefore, Mrs. Bauer's claim for conversion cannot be maintained. Moreover, even if we were to accept Bauer's argument that North Fulton Hospital was a bailee for hire with regard to her husband's corpse, which she also contends, her recourse generally remains limited to reimbursement for the dimin-

ishment in value to her property. *Mayor &c. of Columbus v. Howard*, 6 Ga. 213 (1848). Again, Mr. Bauer's body parts are not subject to such valuation, and Mrs. Bauer's bailment claim must fail, for if no damages are recoverable, the claims can properly be dismissed as untenable.

(b) Bauer also claims that North Fulton Hospital breached an implied contract to appropriately care for Mr. Bauer both before and after his death. Implied contracts are subject to a four-year statute of limitation, OCGA § 9-3-26, and to the extent that Bauer argues the breach of such a contract, her claims were timely. This does not mean, however, that her claims are automatically enforceable, even assuming that such a contract actually existed.

Again, we focus on the type of damages Bauer may recover in this instance. "Damages recoverable for a breach of contract are such as arise naturally and according to the usual course of things from such breach and such as the parties contemplated, when the contract was made, as the probable result of its breach." OCGA § 13-6-2.

> Damages growing out of a breach of contract . . . must be such as could be traced solely to breach, be capable of exact computation, must have arisen according to the usual course of things, and be such as the parties contemplated as a probable result of such breach. The measure of damages in the case of a breach of contract is the amount which will compensate the injured person for the loss which a fulfillment of the contract would have prevented or the breach of it entailed. In other words, the person injured is, so far as it is possible to do so by a monetary award, to be placed in the position he would have been in had the contract been performed.

(Citation and punctuation omitted.) *Crawford & Assoc. v. Groves-Keen, Inc.*, 127 Ga. App. 646, 650 (194 SE2d 499) (1972).

Even if Mr. Bauer's corneal tissue held pecuniary value, Mrs. Bauer could not sue for its recovery on the basis of contract. OCGA § 31-23-9 makes it a misdemeanor to sell eye tissue for remuneration, making any contract for the sale of eye tissue illegal. If, therefore, Mrs. Bauer were allowed to receive remuneration for the value of Mr. Bauer's eye tissue pursuant to her alleged contract, this Court would have to enforce an illegal arrangement. That we cannot do.

Because Bauer's claims for mental pain and suffering are not pecuniary damages, they cannot be recovered pursuant to her contract claims. Other losses, however, may be recoverable to the extent that Bauer can prove damages relating to the burial and preparation for burial. For example, in *Louisville*, supra, a company was hired to

transport a corpse, in its coffin, between cities. At its destination, the coffin was allowed to sit on an open railroad platform in the rain for several hours. The next of kin sued the transportation company for negligence, and our Supreme Court, while not making any decision regarding the recovery of damages, implied that the next of kin might recover for "actual pecuniary damage to the coffin and shroud, and of injury to the body." Id. at 71.

In this case, therefore, Bauer might recover damages relating to any extra cost paid to the mortuary which flows directly from the removal of Mr. Bauer's eyes. Such damages might, for example, include any additional charge to prepare a corpse with its eyes removed for burial, or costs related to any delay in funeral proceedings resulting from such additional preparation, or other such limited damages. We must reverse this case based upon the trial court's erroneous application of the two-year medical malpractice statute of limitation. Bauer is entitled to present evidence of her claim as herein provided, and we remand this case for further proceeding.

4. Bauer also contends that the trial court erred by dismissing her claim for fraud against North Fulton Hospital. However, even if Bauer's complaint is accepted as true, no actionable fraud has been alleged. Nothing in the complaint or the record supports an inference that North Fulton Hospital knowingly attempted to defraud Bauer of her husband's eye tissue. See OCGA § 9-11-9 (b). Therefore, the trial court did not err in dismissing her claim for fraud.

5. Finally, Bauer contends that North Fulton Hospital violated OCGA § 31-23-6 and that she has a separate cause of action thereunder subject to a 20-year statute of limitation. See OCGA § 9-3-22. We disagree.

OCGA § 31-23-6 sets out the procedure eye banks must follow in harvesting eye tissue for donation and transplantation. OCGA § 31-23-6 (a) (2) provides:

> No physician, coroner, medical examiner, hospital, or funeral director authorizing removal of eye tissue nor any eye bank or its personnel requesting or participating in such removal shall be liable or responsible in any civil or criminal action for the removal or subsequent transplant of the tissue, provided that its removal was in accordance with the requirements of this subsection.

Bauer argues that this section, by referring to civil or criminal liability, recognizes the existence of a separate unique cause of action for removal of eye tissue. This contention is inapposite to the wording of the statute, however, which creates immunity for civil or criminal actions under other areas of the law rather than creating new civil or

criminal actions of its own. Moreover, if the legislature intended for OCGA § 31-23-6 to comprise a separate cause of action for tissue removal, it would have made such intention explicit as it did in OCGA § 31-23-9. Therefore, because Bauer has no separate, unique cause of action under OCGA § 31-23-6, the trial court did not err in dismissing her claim on this ground.

*Judgment affirmed in part and reversed in part and case remanded. Eldridge and Barnes, JJ., concur fully and specially.*

ELDRIDGE, Judge, concurring fully and specially.

While I fully concur in the well-reasoned majority opinion, I wish to elaborate on the damage issues raised in this appeal.

1. Plaintiff could have recovered damages for peace, happiness, and feelings under OCGA § 51-12-6 for the malicious, wilful or wanton conduct of the defendants in tortiously desecrating her husband's body; however, the majority correctly holds that such personal injury damages are barred by the two-year statute of limitation. See *Blanchard v. Westview Cemetery*, 228 Ga. 461 (186 SE2d 92) (1971); see also *Moody v. Dykes*, 269 Ga. 217, 219 (2) (496 SE2d 907) (1998); *Ryckeley v. Callaway*, 261 Ga. 828 (412 SE2d 826) (1992).

2. Whether in contract or tort involving property rights, if there exists either a breach of contract or tortious wrong and no other damages can be proven, then nominal damages would be recoverable where there has been some invasion of such property right that cannot be shown as a special damage. *Weimer v. Cauble*, 214 Ga. 634, 636-637 (106 SE2d 781) (1959); *Williams v. Harris*, 207 Ga. 576, 579 (2) (63 SE2d 386) (1951); *Flanders v. Hill Aircraft &c. Corp.*, 137 Ga. App. 286, 289 (223 SE2d 482) (1976). When special damages have failed of specific proof, nominal damages can be recovered. *Miller &c. Assoc. v. Diedrich*, 174 Ga. App. 249, 254 (3) (329 SE2d 918) (1985), rev'd on other grounds, 254 Ga. 734 (334 SE2d 308) (1985).

3. Where nominal damages have been recovered for a tortious wrong that has aggravating factors, punitive damages may also be recovered. OCGA § 51-12-5.1; *Foster v. Sikes*, 202 Ga. 122, 126 (42 SE2d 441) (1947); *Horne's Pest Control Co. v. Elliott*, 190 Ga. App. 351, 353 (378 SE2d 734) (1989); *Preferred Risk Ins. Co. v. Boykin*, 174 Ga. App. 269, 276-277 (10) (329 SE2d 900) (1985).

I am authorized to state that Judge Barnes joins in this special concurrence.

DECIDED DECEMBER 16, 1999.

*Christopher D. Langley*, for appellants.

*Hall, Booth, Smith & Slover, Timothy H. Bendin, Jonathan Marigliano,* for appellee.