[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 12, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-10969

_____

D. C. Docket No. 06-01258-CV-CAP-1

IRIS NORWOOD JOHNSTON,
Executrix of the Will of Richard H. Johnston,

Plaintiff-Appellee
Cross-Appellant,

versus

COMPANION PROPERTY & CASUALTY INSURANCE COMPANY,

Defendant-Appellant
Cross-Appellee.

_____

Appeals from the United States District Court
for the Northern District of Georgia

_____

**(March 12, 2009)**

Before MARCUS, KRAVITCH and ANDERSON, Circuit Judges.

PER CURIAM:

This case involves an insurance dispute between the late Richard H.

Johnston[1] and Companion Property & Casualty Insurance Company

("Companion"). Following a trial, the jury returned a verdict against Companion

and in favor of Johnston, awarding $117,551.30 for breach of contract, plus a bad

faith penalty and attorney's fees. The district court vacated the award of a bad

faith penalty and attorney's fees, but left undisturbed the jury's verdict and award

for breach of contract. Companion appeals the breach of contract verdict, arguing

that the district court gave an improper jury instruction, the insurance policy did

not cover the roof collapse, and damages were not adequately proven. Johnston

cross-appeals, arguing that the district court erred in vacating the bad faith penalty

and attorney's fees. For the reasons set forth below, we affirm.

## I. Facts

The insured property at issue in this appeal is a flat-roofed commercial

building located in College Park, Georgia, that houses offices, a laundromat, and a

warehouse. The warehouse portion of the building is seventy-nine feet long and

contains a small staircase leading to a twenty-four-foot long mezzanine. The

mezzanine is located in the front portion of the warehouse and is used for storing

boxes of documents. Following a period of heavy rain, on June 15, 2004,

Johnston's son discovered that a portion of the warehouse's roof had collapsed. At

---

[1] Johnston died during the pendency of this appeal and the executrix of his will, Iris Norwood Johnston, was substituted as a party.

the time of the collapse, the building was insured with Companion. The insurance

policy states, in relevant portion:

> We will pay for direct physical loss or damage to Covered Property,
> caused by collapse of a building or any part of a building . . . if the
> collapse is caused by one or more of the following:
>> . . .
>> b. Decay that is hidden from view, unless the presence of such
>> decay is known to an insured prior to the collapse . . .

Johnston filed an insurance claim with Companion and retained a contractor,

Sherman Neal Brown, to evaluate the damage and suggest repairs. Brown

recommended that temporary repairs be conducted to prevent further damage to the

warehouse's structure and contents. At Johnston's request, Brown made $20,619

in temporary repairs.[2] Johnston submitted a copy of the invoice for these repairs to

Companion.

Companion retained an engineer, David Hildebrand, who examined the

warehouse, took pictures of the damage, spoke with Brown, and reported his

findings to Companion. Based on Hildebrand's investigation, Companion sent a

letter to Johnston on September 1, 2004, denying the entire claim on the grounds

that the collapse was not covered under the insurance policy.

Johnston sent a demand letter on November 30, 2004, indicating that if

Companion did not pay for all necessary repairs within sixty days, he would bring

---

[2] As of the date of trial, permanent repairs still had not been conducted.

3

suit seeking damages under the contract, as well as a bad faith penalty and attorney's fees.[3] Companion did not respond and the instant suit was filed in Georgia state court on April 12, 2006. Companion thereafter removed the action to federal court based on diversity of citizenship. See 28 U.S.C. § 1332.

The case was tried before a jury in September 2007. Four witnesses testified: (1) Richard Johnston, plaintiff; (2) Neal Brown, plaintiff's contractor; (3) Robert Clein, plaintiff's expert; and (4) David Hildebrand, defendant's expert. The witnesses agreed that the damage to the warehouse was caused by a collapse and that the collapse was at least partially the result of decay to the warehouse's roof trusses.[4] The parties' primary dispute was whether the decay to the roof trusses was "hidden from view." If the decay that caused the collapse was not "hidden from view," Johnston was precluded from recovering under the policy.

At the close of Johnston's case, Companion moved for a directed verdict on the grounds that Johnston failed to prove: (1) that the decay was "hidden from view"; (2) his damages; and (3) that Companion acted in bad faith. This motion was denied. At the close of the defense, Companion brought a motion for

---

[3] Georgia law requires that as a prerequisite to a claim for bad faith damages, the insured must make a demand for payment at least sixty days prior to commencing suit against the insurer. O.C.G.A. § 33-4-6(a).

[4] At trial, the lawyers and witnesses sometimes referred to the decayed portions of the ceiling as "roof trusses" and other times as "roof joists." For the sake of consistency, we will refer to the decayed wood collectively as "roof trusses."

4

judgment as a matter of law on all three grounds, which was also denied.

The jury returned a verdict in Johnston's favor on September 12, 2007, awarding $117,551.30 for breach of contract, $11,755 as a bad faith penalty, and $40,000 in attorney's fees. Companion thereafter renewed its motion for judgment as a matter of law on the same three grounds as before, as well on the ground that the district court erred by charging the jury on ambiguity and contract construction. Companion argued that, in the alternative, it was entitled to a new trial on those grounds. On January 30, 2008, the district court entered an order granting Companion's motion for judgment as a matter of law on the bad faith claim, vacating the jury verdicts as to both the bad faith penalty and attorney's fees. The district court denied the motions for a new trial and judgment as a matter of law on the breach of contract claim. Both parties now appeal.

## II. Discussion

A. Jury charge

Companion argues that it is entitled to a new trial because the district court committed reversible error by instructing the jury on ambiguity and principles of contract construction.

*1. Standard of review*

We review the district court's denial of a motion for new trial for abuse of

5

discretion. Bianchi v. Roadway Express, Inc., 441 F.3d 1278, 1282 (11th Cir. 2006). We review jury instructions to determine "whether the jury charges, considered as a whole, sufficiently instructed the jury so that the jurors understood the issues and were not misled. If jury instructions accurately reflect the law, the trial judge is given wide discretion as to the style and wording employed in the instruction." Johnson v. Barnes & Noble Booksellers, Inc., 437 F.3d 1112, 1115 (11th Cir. 2006) (citations and quotations omitted). We will only grant a new trial based on inadequate jury instructions in cases in which "the instructions did not accurately reflect the law in such a way that we are left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations." Cleveland v. Home Shopping Network, Inc., 369 F.3d 1189, 1196 (11th Cir. 2004) (citation and quotations omitted). This court reviews the jury instructions de novo to determine whether they misstate the law or mislead the jury to the detriment of the objecting party. Tran v. Toyota Motor Corp., 420 F.3d 1310, 1313 (11th Cir. 2005). Jury instructions must, however, be considered as a whole and are subject to harmless error analysis. Cistola v. Daniel, 598 S.E.2d 535, 540 (Ga. Ct. App. 2004).

   *2. Merits*

   Companion argues that the district court improperly charged the jury by

6

giving the following jury instructions: (1) the ambiguity charge – "[t]he plaintiff contends that the language, hidden from view, . . . is ambiguous . . ."; and (2) the contract construction charge – "[i]nsurance policies are to be construed in favor of the insured and against the insurance company where the policy language is ambiguous and the insurer has been the drafter of the contract." Companion argues that under Georgia law, a court should not charge a jury on principles of ambiguity and contract construction unless the court has already found that a contractual term is ambiguous. Companion argues that because the district court made no such finding, it erred by instructing the jury on how to interpret ambiguous contractual terms.[5]

"The construction of a contract is a question of law for the court. Where any matter of fact is involved, the jury should find the fact." O.C.G.A. § 13-2-1.[6] Where a contract is unambiguous, it is "improper for the court to give the jury any instruction with regard to the manner in which the contract should be construed."

---

[5] Companion objected to the district court's ambiguity charge at the charge conference, but did not object to the contract construction charge. "We review alleged errors in jury instructions only for plain error where the aggrieved party failed to raise an objection prior to jury deliberations." Wilbur v. Corr. Servs. Corp., 393 F.3d 1192, 1203 n.6 (11th Cir. 2004); see Fed. R. Civ. P. 51(c)(1). In any event, the standard of review is immaterial because even if we were to review the contract construction charge de novo, we would still conclude that the district court did not commit error that warrants reversal.

[6] In the instant case, subject matter jurisdiction is based on diversity of citizenship, so state substantive law applies. See McMahan v. Toto, 256 F.3d 1120, 1131 (11th Cir. 2001).

Transamerica Ins. Co. v. Thrift-Mart, Inc., 285 S.E.2d 566, 571 (Ga. Ct. App. 1981) (quotations and citation omitted). Georgia law requires that before submitting a contract construction charge to a jury, the trial court should conduct the following inquiry:

> First, if no ambiguity appears, the trial court enforces the contract according to its terms irrespective of all technical or arbitrary rules of construction. Thus, where the terms of the contract are clear and unambiguous, the court looks only to the contract to find the parties' intent. Second, if the potential for ambiguity appears, the existence or non-existence of an ambiguity is itself a question of law for the court, unless an ambiguity remains even after the court has applied the pertinent rules of contract construction. Finally, issues of contract construction will be submitted to the jury only when there appears to be an ambiguity in the contract which cannot be resolved by the court's application of the statutory rules of construction.

Ga. Ass'n of Educators, Inc. v. Paragon Prod., Inc., 520 S.E.2d 37, 39 (Ga. Ct. App. 1999). Failure to properly apply this test can constitute reversible error. See Travelers Ins. Co. v. Blakey, 342 S.E.2d 308 (Ga. 1986).

The district court did not find an ambiguity in the contract, as required under step one of the test enunciated in Georgia Association of Educators. In fact, during the charge conference the district court expressly stated that "hidden from view," as used in the contract, "isn't ambiguous to me." It was therefore improper for the district court to instruct the jury on how to interpret an ambiguous contractual term.

This error, however, is harmless when construed in light of the charge as a whole. Shortly after the ambiguity and contract construction charges, the district court told the jury that decay is not "hidden from view" if it is "exposed and open to plain sight." The court further explained that simple "failure of an insured to observe decay" does not render otherwise exposed decay "hidden from view." Because the court defined "hidden from view," the jury would have understood that despite the previous contract construction charge, it was not authorized to apply its own meaning to this term. Given this charge, the jury could not have believed that it was authorized to alter the interpretation of this term. The errors in the jury charge are therefore harmless in light of subsequent portions of the jury instructions.

Because the errors in the charge were harmless, the district court did not abuse its discretion by denying the motion for a new trial based on the jury instructions.

B. Breach of contract claim

Companion argues that it is entitled to judgment as a matter of law, or in the alternative a new trial, on the breach of contract claim because there was insufficient evidence to support the jury's verdict and damages award.

*1. Standard of review*

We review <u>de novo</u> a district court's denial of a motion for judgment as a

matter of law.  <u>Goldsmith v. Bagby Elevator Co., Inc.</u>, 513 F.3d 1261, 1275 (11th

Cir. 2008).  "We will reverse only if the facts and inferences point overwhelmingly

in favor of one party, such that reasonable people could not arrive at a contrary

verdict.  We consider all the evidence, and the inferences drawn therefrom, in the

light most favorable to the nonmoving party."  <u>Id.</u> (quotations and citations

omitted); <u>see</u> Fed. R. Civ. P. 50(a)(1).[7]

*2. "Hidden from view"*

Companion concedes that Johnston was subjectively unaware of the decay,

but argues that all of the witnesses, including Johnston and his expert,

acknowledged that the decay was apparent and visible from inside the warehouse.

Companion argues that if Johnston "took the time to look," he would have seen the

decay.  As such, it contends that Johnston failed to prove that the decay on the

building was "hidden from view," as required for coverage under the insurance

policy.

Under Georgia law, "[w]ords in an insurance contract must be given their

---

[7] We review the denial of a motion for a new trial for abuse of discretion.  <u>Bianchi</u>, 441 F.3d at 1282.  We need not separately review this issue under the more lenient standard because we conclude that there is sufficient evidence to support the jury's verdict under the more stringent <u>de novo</u> standard.

usual, ordinary, and common meaning." Bold Corp., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 454 S.E.2d 582, 584 (Ga. Ct. App. 1995). In its ordinary usage, something is considered "hidden" if it is "out of sight." Webster's Third New International Dictionary 1065 (1986).

After viewing the evidence in the light most favorable to the verdict, we conclude that there was sufficient evidence for the jury to conclude that the decay was "hidden from view." The evidence presented at trial established that the warehouse was dimly lit, containing only a few fluorescent fixtures. The decayed roof trusses were located approximately sixteen feet above the warehouse's floor. Johnston, Brown, and Clein all testified that when standing underneath the mezzanine, view of the decayed trusses was obscured by a beam and boxes stacked on top of the mezzanine. Companion's expert, Hildebrand, agreed that "[i]f one were standing underneath the mezzanine, you could not see the decay on the roof structure." The witnesses only viewed the decayed trusses after the collapse. The witnesses therefore could not speak definitively as to how apparent the decay was prior to the collapse.

Companion has not met the weighty burden of showing that "reasonable people could not arrive at a contrary verdict." Goldsmith, 513 F.3d at 1275. A reasonable jury could have found that the poor lighting, the beam, and the boxes

11

stacked on the mezzanine rendered the decay "out of sight," and thus "hidden from view."

We therefore conclude that the district court did not err in denying the motions for judgment as a matter of law and a new trial on the grounds that the decay was not "hidden from view."

*3. Damages*

The jury awarded Johnston a total of $117,551.30 on the breach of contract claim, which encompassed both the actual cost of temporary repairs and the estimated cost of future repairs. Companion does not challenge the award of $20,619 for the temporary repairs conducted by Brown, but argues that the jury was not provided with sufficient evidence from which it could assess the cost of future repairs.

At trial, Johnston presented Brown's February 2006 estimate for permanent repairs, which totaled $96,982.30. Brown testified that the estimate was accurate when given, but admitted that those figures had become outdated and that the present cost of repair was likely higher. Companion argues that because this figure was outdated and no other witnesses testified as to the present cost of repairs, the jury should not have been permitted to include the cost of permanent repairs in its jury verdict.

12

"It is axiomatic that damages cannot be left to speculation, conjecture, or guess-work and must be proven with reasonable certainty." Kroger Co. v. U.S. Foodservice of Atlanta, Inc., 607 S.E.2d 177, 181 (Ga. Ct. App. 2004). When considering the costs of repair, the plaintiff is only entitled to those expenses "which would have been incurred had the repairs been undertaken upon the discovery of the damage . . . not the cost of repairs as incurred [at a later date.]" Getz Services, Inc. v. Perloe, 327 S.E.2d 761, 765 (Ga. Ct. App. 1985).

Companion's argument is flawed because the award should be based on the cost of repairs at the time of discovery of the damage. It is of no consequence that the actual cost of repair may have changed by the time of trial.[8] The jury's verdict did not exceed Brown's estimate. We therefore conclude that the district court did not err in finding the jury's award of damages was supported by sufficient evidence.

C. Bad faith penalty and attorney's fees

Johnston cross-appeals, arguing that the district court erred in granting Companion's motion for judgment as a matter of law on the bad faith verdict. In

---

[8] The collapse occurred in 2004, but Brown did not prepare an estimate for permanent repairs until 2006. Companion, however, has not argued that the 2006 estimate inaccurately reflects the 2004 cost of repairs. We therefore will not consider this issue. See Doe v. Dekalb County Sch. Dist., 145 F.3d 1441, 1445 n.4 (11th Cir. 1998) (issues not raised in a party's brief are considered abandoned).

13

the alternative, Johnston argues that even if judgment as a matter of law was appropriate, the district court erred in vacating the attorney's fees award.

*1. Standard of review*

We review a district court's order granting a motion for judgment as a matter of law de novo. Rossbach v. City of Miami, 371 F.3d 1354, 1356 (11th Cir. 2004).

*2. Bad faith*

Johnston argues that the district court erred in vacating the award of a bad faith penalty. He asserts that Companion's initial denial of his claim was in bad faith because the damage to the warehouse was clearly within the parameters of the policy, Companion failed to investigate the claim in a timely manner, Companion implied to Johnston and Brown that the damage would be covered under the policy, and that in reliance on Companion's implication that the damages would be covered, Brown engaged in temporary repairs that resulted in spoliation of evidence.

Most of the facts that Johnston points to are irrelevant to proving a claim for bad faith failure to pay. Under Georgia law, a court may impose a bad faith penalty against an insurer and require it to pay the insured's attorney's fees in the following situation:[9]

---

[9] Johnston argues that Companion engaged in what he refers to as both "normal" and "abnormal" bad faith. "Abnormal" bad faith is a creature of Alabama caselaw, see In re

14

In the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal was in bad faith, the insurer shall be liable to pay such holder, in addition to the loss, not more than 50 percent of the liability of the insurer for the loss . . .

O.C.G.A. § 33-4-6. "To prevail on a claim for an insurer's bad faith under O.C.G.A. § 33-4-6, the insured must prove: (1) that the claim is covered under the policy, (2) that a demand for payment was made against the insurer within 60 days prior to filing suit, and (3) that the insurer's failure to pay was motivated by bad faith." Lavoi Corp., Inc. v. Nat'l Fire Ins. of Hartford, 666 S.E.2d 387, 391 (Ga. Ct. App. 2008). These requirements are strictly construed. BayRock Mortgage Corp. v. Chi. Title Ins. Co., 648 S.E.2d 433, 435 (Ga. Ct. App. 2007). "The insured bears the burden of proving bad faith, which is defined as any frivolous and unfounded refusal in law or in fact to comply with the demand of the policyholder to pay according to the terms of the policy." Ga. Farm Bureau Mut. Ins. Co. v. Williams, 597 S.E.2d 430, 432 (Ga. Ct. App. 2004). A penalty for bad faith is not permissible "where the insurance company has any reasonable ground to contest the claim and where there is a disputed question of fact." S. Fire & Cas. Ins. Co. v. Nw. Ga. Bank, 434 S.E.2d 729, 730 (Ga. Ct. App. 1993) (quotation

Simmons v. Cong. Life Ins. Co. & Insurers Admin. Corp., 791 So.2d 371, 379 (Ala. 2000), and has not been recognized by any Georgia courts. We therefore will only examine the facts in light of what Johnston refers to as "normal" bad faith, which is recognized under Georgia law.

15

omitted).

In the present case, the first two elements of a § 33-4-6 bad faith claim were satisfied because the jury found that the insurance claim was covered under the policy and it is undisputed that Johnston sent a demand, to which Companion did not respond within 60 days. We agree with the district court, however, that Johnston failed to prove the third element of a bad faith claim. Companion had a legitimate, although ultimately unsuccessful, challenge to Johnston's claim. Johnston argues that he was deceived by Companion as to the purpose of its investigation, but he does not allege that Companion's subsequent denial of payment was done in bad faith, as required for a bad faith claim under Georgia law. See Ga. Farm Bureau Mut. Ins. Co., 597 S.E.2d at 432.

We conclude that the evidence does not support the jury's conclusion that Companion engaged in a bad faith failure to pay. Although the jury ultimately found that the decay was not "hidden from view," Companion's theory at trial was not so unreasonable as to be considered "frivolous and unfounded." Because Companion's reason for denying coverage was not so unbelievable as to sink below the minimal threshold of "any reasonable ground to contest the claim," S. Fire & Cas. Ins. Co., 434 S.E.2d at 730 (emphasis added), the district court did not err in granting judgment as a matter of law on the bad faith claim.

16

*3. Attorney's fees*

Having concluded that the district court did not err in granting judgment as a matter of law on the bad faith penalty, Johnston may not collect attorney's fees under O.C.G.A. § 33-4-6 because that statute only applies to cases in which the insurer acted in bad faith. Johnston argues, however, that he was also entitled to attorney's fees under O.C.G.A. § 13-6-11.

O.C.G.A. § 13-6-11 allows the jury to award attorney's fees "where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." Georgia courts have explicitly stated that in cases where a plaintiff alleges that an insurer engaged in bad faith by refusing to pay a claim, an action "for attorney fees and expenses of litigation under OCGA § 13-6-11 is not authorized." Howell v. Southern Heritage Ins. Co., 448 S.E.2d 275, 276 (Ga. Ct. App. 1994).

Johnston is precluded under Georgia law from availing himself of O.C.G.A. § 13-6-11 because "[t]he penalties contained in OCGA § 33-4-6 are the exclusive remedies for an insurer's bad faith refusal to pay insurance proceeds." Id. The district court therefore did not err in vacating the jury's attorney's fees award.

### III. Conclusion

For the reasons set forth, the judgment of the district court is affirmed.

**AFFIRMED.**